Jessica FOX, p. p. a., et al.

v.

ALLSTATE INSURANCE CO.

No. 78–351–Appeal.

Supreme Court of Rhode Island.

Feb. 13, 1981.

**904**

Lovett & Linder, Ltd., Stephen G. Linder, Michael S. Schwartz, Providence, for plaintiffs.

Paul A. Anderson, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This is a civil action instituted by Jessica Fox, a minor, and her father, Worth Fox, against the Allstate Insurance Co. The case arose out of an accident in August 1973 between Jessica and an automobile driven by Philomena Charette, an uninsured motorist. Although Mrs. Charette was uninsured, the plaintiffs' insurance policy provided coverage for accidents between members of the plaintiffs' family and uninsured motorists. The plaintiffs have sued their insurer, the defendant Allstate Insurance Co., seeking benefits under this policy. The jury returned a verdict for the plaintiffs. The defendant appeals from the denial of motions for a directed verdict and new trial. The defendant also alleges error in the refusal of the trial justice to give certain jury instructions. The plaintiffs appeal from the trial justice's denial of their motion for additur or new trial on damages. We affirm.

The pertinent facts are these. Late in the afternoon of August 31, 1973, Jessica Fox, age seven, and two of her playmates decided to walk from their neighborhood to buy soda at a store on Mineral Spring Avenue, North Providence. Because of the hour, traffic was heavy on Mineral Spring Avenue. In attempting to cross the street, Jessica collided with an automobile driven by Philomena Charette.

At trial, Jessica testified that her two playmates crossed Mineral Spring Avenue ahead of her and were beckoning to her to join them when she collided with the car. The other children claimed that Jessica was crossing ahead of them when the accident occurred. Mrs. Charette testified that she had not seen any children cross, that in any event she was not looking for pedestrians, and that her first knowledge of Jessica's presence was when, upon hearing a "thud" against her car, she looked in the mirror and saw the little girl lying on the street.

Jessica was immediately hospitalized and underwent emergency surgery to stop internal bleeding. Doctor Arnold Rosenbaum, who performed the surgery, testified that it was necessary to remove her gall bladder and portions of her liver and to insert a drainage tube in her chest cavity. Doctor Rosenbaum stated that the child's life had been in jeopardy for a period immediately after the operation, that she spent several days in intensive care, and that she remained hospitalized for over a month. Upon her release from the hospital, Jessica's activities were restricted in several ways. She was out of school for approximately six weeks and was prohibited from participating in physical education and riding a bicycle for some time because of her susceptibility to reinjury. As a result of the surgery, Jessica has a scar running from the bottom of her breast bone to her navel. Finally, Dr. Rosenbaum testified that in September 1975, approximately two years after the accident, he examined Jessica and found her to be "doing very nicely and growing normally."

I

## MOTION FOR DIRECTED VERDICT

■ At the close of plaintiffs' case, defendant moved for a directed verdict. This court stated the rules for considering such a motion in *Evans v. Liguori*, 118 R.I. 389, 374 A.2d 774 (1977):

"When a motion for a directed verdict is made, the trial court and, * * * this court on review must consider the evidence in the light most favorable to the party against whom the motion is made without weighing the evidence or considering the credibility of the witnesses and extract from that record only those reasonable inferences that support the position of the party opposing the motion * * *. If there exist issues of fact upon which reasonable men may differ, the trial court has no alternative other than to let the jury decide them." [Citations omitted]. *Id.* at 394, 374 A.2d at 776.

In the instant case a review of the evidence discloses the following facts when viewed in the light most favorable to the plaintiff. Jessica testified that she and two playmates were about to cross Mineral Spring Avenue when a car coming from their left stopped, apparently to let them pass. The three children then crossed to the center of the highway. Jessica's two playmates left her side and crossed to the opposite side of the street, where they stood on the sidewalk beckoning to her to come. At this point Jessica attempted to complete her crossing but came into collision with the Charette vehicle. From this testimony an inference might fairly be drawn that had Mrs. Charette been keeping a reasonably alert lookout, she would have seen the three children in their crossing attempt, as had the driver of the automobile coming from the opposite direction. She would further have noted Jessica standing in the middle of the street with her friends beckoning to her from the opposite side. The evidence pertaining to relative movement of the automobiles and the children sustains the inference that all of these events would have been visible to the operator of an automobile who was maintaining the type of look-

out required in the exercise of due care on a heavily traveled public street. There was also evidence in the case that Mrs. Charette was not looking for pedestrians in the area at that time. Putting these elements together, the trial justice drew the reasonable conclusion that a jury might upon this state of the evidence, find that Mrs. Charette had been negligent and that her negligence was a proximate cause of the collision. Therefore, the trial justice properly denied defendant's motion for a directed verdict.

## II

### JURY INSTRUCTIONS

■ At the close of all the evidence, defendant submitted eleven specific requests for instructions to the jury. The defendant appeals specifically from the refusal of the trial justice to give two of these requests, numbered 2 and 8.[1]

■ Request number 2 sought an instruction based upon G.L. 1956 (1968 Reenactment) § 31–18–3, which establishes the right-of-way in crosswalks as between pedestrians and motor vehicles. Rather than instructing on this section, however, the trial justice employed G.L. 1956 (1968 Reen-

actment) § 31–18–5, which applies to crossings other than at crosswalks. The only evidence in the record pertaining to crosswalks indicates that there was no crosswalk at the scene of the accident. Thus, had the trial justice complied with defendant's request, he would have instructed on a point of law inapplicable to the facts in evidence. His denial of request number 2 was in keeping with our rule that a charge to the jury must relate to facts that have come into evidence. *Hamrick v. Yellow Cab Co.*, 111 R.I. 515, 521, 304 A.2d 666, 670 (1973); *Cinq-Mars v. Standard Cab Co.*, 103 R.I. 103, 109, 235 A.2d 81, 84 (1967). We therefore sustain the denial of request number 2.

■ The defendant also appeals from the refusal of the trial justice to give requested charge number 8, which reads:

"A motorist's duty to look is only necessary when looking will seasonably apprise a reasonably careful person of the conditions confronting him."

For this proposition defendant relies upon *Dembicer v. Pawtucket Cabinet & Builders Finish Co.*, 58 R.I. 451, 193 A. 622 (1937). Not only is the request not supported by the rule of *Dembicer*[2] but a careful reading of

1. The defendant objected to the court's denial of requested instructions without stating the grounds for objection. This does not comply with the strict language of Super.R.Civ.P. 51(b). We held in *Armstrong v. Polaski*, 117 R.I. 565, 568 n.3, 369 A.2d 249, 251 n.3 (1977), however, that by filing a written request for instructions and a timely objection to denial of such request, a party properly preserves the right to assert error on appeal. Thus, we may consider this issue on appeal.

2. In *Dembicer v. Pawtucket Cabinet & Builders Finish Co.*, 58 R.I. 451, 193 A. 622 (1937), an accident occurred when the plaintiff observed a truck coming from a side street to his right as the two approached an intersection. The plaintiff paused to allow another car from the left street to pass through the intersection before him. Without looking again and having previously seen the truck coming from the right, the plaintiff, who had the right-of-way, entered the intersection and collided with the truck. On these facts this court held the plaintiff contributorily negligent, reasoning in the following manner:

"The driver of an automobile intending to cross an intersection should not only observe the so-called laws of the road * * * but,

before crossing, he should look when looking is efficient and take into consideration the circumstances attending at the time, such as the physical conditions at the intersection, the weather, road and light conditions, the relative importance of the streets or highways forming the intersection, the intensity and course of traffic, and the distance and speed of other vehicles that may be approaching that same intersection. The rule in our cases that one must look before entering and crossing an intersecting street requires that one look at a time and place when looking will seasonably apprise a reasonably careful person of the conditions confronting him at the intersection, so that he may control his actions accordingly. The duty is not merely one of looking but is one of observing the traffic and general situation at or in the vicinity of the intersection. He must look in the careful and efficient manner in which a man of ordinary prudence in like circumstances would look in order to ascertain the existing conditions for his guidance." *Id.* at 456, 193 A. at 624–25.

Far from restricting the duty to look, this court held in *Dembicer* that looking once does not discharge the duty; the motorist must continue

the requested charge clearly shows it to be erroneous as a matter of law. It can scarcely be contended that a motorist is ever absolved from the duty to look. The results of looking may vary, and cases may arise in which the failure to see resulted from a condition or physical obstruction such that looking could not have avoided an accident.[3] In such cases the failure to perceive may not be the result of negligence. Because we are satisfied that the trial justice, in charging on the general principles of negligence and proximate cause, adequately covered these points of law, we sustain the denial of request number 8. *See Hamrick v. Yellow Cab Co.*, 111 R.I. at 521, 304 A.2d at 670.

### III

### NEW TRIAL MOTIONS

■ The jury returned a verdict for the plaintiffs, awarding $10,000 for Jessica for pain and suffering and $9,269.87 to Worth Fox for his daughter's medical expenses. Because the jury found Jessica's contributory negligence to be a 50 percent cause of the accident, the jury reduced these awards to $5,000 and $4,634.94 respectively. The defendant moved for a new trial, and plaintiffs moved for additur or a new trial on the issue of damages. These motions were denied, and both parties appeal. The rules for considering a motion for a new trial following a jury verdict are well settled. In *Barbato v. Epstein*, 97 R.I. 191, 196 A.2d 836 (1964), this court clearly delineated the function of a trial justice in considering such a motion. The trial justice first must consider all material evidence in the case in the light of the charge to the jury. In so doing, the trial justice must pass upon the weight and credibility of the evidence, accepting and rejecting conflicting testimony as if he were sitting as a fact-finder. Similarly, the judge may give weight to those facets of the evidence that he concludes are credible, drawing there-

from all proper and appropriate inferences. Having completed this process, the trial justice next must decide "whether to approve the verdict even against doubts as to its correctness because *the evidence is nearly balanced, or is such that different minds can naturally and fairly come to different conclusions thereon * * *.*" *Id.* at 194, 196 A.2d at 837 (emphasis added). We stated in *Galusha v. Carlson*, R.I., 386 A.2d 634 (1978), that as long as the trial justice undertakes the evaluation required in *Barbato*, we will overturn his decision only when the trial justice "in so performing his duty * * * overlooked or misconceived material evidence or was otherwise clearly wrong * * *." 386 A.2d at 635. Furthermore, even if we believe that the trial justice erred in performing his function under *Barbato*, "the jury's verdict will remain unchanged if this court, upon looking at the record in the light most favorable to the prevailing party, finds any competent evidence which sustains the jury's verdict." *Powers v. Carvalho*, 117 R.I. 519, 525, 368 A.2d 1242, 1246 (1977); *Morinville v. Morinville*, 116 R.I. 507, 516, 359 A.2d 48, 54 (1976).

■ In the instant case there is no doubt that the trial justice carefully undertook to review all evidence in passing upon this motion. In so doing, he concluded that had he been deciding the case as trier of fact, he would have found for defendant.

Having concluded that he would have reached a different verdict, the trial justice's task was not complete. As required in *Barbato*, he next considered whether to approve the verdict "even against his doubts as to its correctness." 97 R.I. at 194, 196 A.2d at 837. Reasoning that the jury had concluded that an attentive driver could have taken some form of evasive action, the trial justice concluded that "this is one of those rare cases * * * where *on the credible evidence reasonable minds could*

---

to look and observe in a "careful and efficient manner." *Id.*, 193 A.2d at 625.

**3.** *See Audiss v. Peter Kiewit Sons Co.*, 190 F.2d 238, 242 (8th Cir. 1951) (cannot hold driver to

duty of seeing object that was "perfectly camouflaged"); *Chaffin v. Brame*, 233 N.C. 377, 380, 64 S.E.2d 276, 279 (1951) (law does not require motorist to see that which is invisible to person exercising ordinary care).

*differ* as to the inferences to be drawn from the evidence and the ultimate conclusion" (emphasis added).

Because the trial justice clearly performed the steps outlined in *Barbato*, our rule permits us to reverse only if the appealing party shows that the trial justice "overlooked or misconceived material evidence or was otherwise clearly wrong * *." *Galusha v. Carlson*, R.I., 386 A.2d at 635; *Bailey v. Huling*, R.I., 377 A.2d 220, 224 (1977). The defendant, however, points to no evidence that the trial justice overlooked or misconceived. Nor does the defendant advance any theory to support the proposition that the trial justice was clearly wrong. Because the defendant has failed to demonstrate that the trial justice was clearly wrong or that he overlooked or misconceived material evidence, we affirm the denial of defendant's motion for a new trial. *Id.* at 377 A.2d at 224.

█ The plaintiffs' motion for a new trial on the ground of inadequacy of damages required the trial justice to perform the same function that he performed in considering the defendant's general motion for a new trial. *Roberts v. Kettelle*, 116 R.I. 283, 301, 356 A.2d 207, 218 (1976); *see Morinville v. Morinville, supra.* As long as the trial justice performs this task, we shall not disturb his decision unless it is clearly wrong. *Roberts v. Kettelle, supra.* After weighing the evidence regarding damages, the trial justice in the instant case concluded that the damages awarded by the jury were adequate. We see nothing in the trial justice's decision or on the record to persuade us that this decision was clearly wrong. For this reason we affirm the denial of the plaintiffs' motions for additur and a new trial on the issue of damages.

For the reasons stated, the defendant's appeal and the plaintiffs' cross-appeal are denied and dismissed, the judgment below is affirmed, and the case is remitted to the Superior Court.