**AAA POOL SERVICE & SUPPLY, INC. et al.**

v.

**The AETNA CASUALTY AND SURETY COMPANY et al.**

**No. 81–282–Appeal.**

Supreme Court of Rhode Island.

July 31, 1984.

Reargument Denied Oct. 1, 1984.

Richard A. Gonnella, West Warwick, for plaintiffs.

James T. Murphy, Hanson, Curran & Parks, Providence, Louis M. Cioci, Johnston, for defendants.

## OPINION

MURRAY, Justice.

This is a defamation action in which the defendants, the Aetna Casualty and Surety Company (Aetna), Vincent Capone (Capone), and Boylan & Capone, Inc. (Boylan & Capone), appeal from a Superior Court verdict rendered in favor of the plaintiff, Thomas Mercurio (Mercurio). The plaintiffs, AAA Pool Service & Supply, Inc. (AAA Pool), and Mercurio, its president, filed the present action in Superior Court, alleging that Boylan & Capone and Vincent Capone were duly authorized agents of Aetna and that on September 2, 1974, Capone slandered the plaintiffs. The case was tried before a justice of the Superior Court sitting with a jury. At the conclusion of its deliberations, the jury found that Capone had slandered Mercurio but not AAA Pool. Compensatory damages were not awarded by the jury. The jury did assess, however, punitive damages in the amount of $30,000 against each defendant.

The plaintiffs' chief witness, Mrs. Penelope Walker, testified at trial that she telephoned Capone on September 2, 1974, to report damage from vandalism to her swimming-pool liner. Mrs. Walker's property was insured by Aetna under a homeowner's insurance policy obtained through

Capone (president and sole shareholder of Boylan & Capone). According to Mrs. Walker, at some point during the conversation Capone asked her whether the pool that had been damaged had been supplied by AAA Pool. Mrs. Walker testified that she told Capone that the pool had been supplied by AAA Pool. Upon learning of this fact, Capone told her that "Mercurio was a slippery character and that he was an arsonist, that he had had blown up his bulldozer and set fire to his building on Warwick Avenue."[1]

Mrs. Walker, a friend as well as a customer of Mercurio's, testified that immediately following her conversation with Capone, she telephoned Mercurio and advised him of Capone's remarks. Mercurio testified that directly after receiving Mrs. Walker's call, he telephoned Capone and questioned him about the statements attributed to him by Mrs. Walker. According to Mercurio, Capone initially denied making any such statements to Mrs. Walker but then admitted having made them. Capone flatly denied making any defamatory statements about Mercurio or AAA Pool.

At the close of the evidence, following his charge to the jury, the trial justice submitted written interrogatories to the jury. The jury returned a verdict, upon these interrogatories, in favor of plaintiff Mercurio only, and against each defendant for punitive damages in the amount of $30,000.

Aetna argues upon appeal to this court, inter alia, that the trial justice committed error in denying Aetna's motions for directed verdicts. At trial, Aetna moved for a directed verdict at the close of plaintiff's case and again at the close of all the evidence. The trial justice denied Aetna's mo-

tion at the close of plaintiff's case. At the close of all the evidence, the trial justice reserved his decision on the motion pursuant to Rule 50(b) of the Superior Court Rules of Civil Procedure and sent the case to the jury. After a verdict was returned and the jury was discharged, the trial justice denied Aetna's motion.

The record indicates that Aetna's motions for directed verdicts were made in the alternative. Aetna's principle argument to the trial justice in support of these motions was that there was insufficient evidence to establish that Capone or Boylan & Capone was acting within the scope of any agency that may have existed between them and Aetna at the time that the alleged slanderous comments were made. The record unfortunately does not contain a transcription of the arguments of Aetna's counsel made at the close of all the evidence. There is, however, clear reference to that argument in the record. That reference was made during the course of the trial justice's consideration of the motion after the jury had been discharged, and it indicates that Aetna's counsel had also requested that the trial justice direct a verdict in favor of Aetna on the question of punitive damages.

█ It is our opinion that the trial justice properly denied Aetna's initial motion for a directed verdict. Reviewing the record in the light most favorable to plaintiff, we find that there was sufficient evidence to support a jury finding that Capone "was acting as an agent of the Aetna within the scope of his authority" at the time he allegedly slandered Mercurio. With regard to Aetna's motion for a directed verdict on punitive damages, however, we hold that the trial justice erroneously failed to direct

1. Mercurio founded AAA Pool in 1972. The bulk of his various insurance policies was purchased through Boylan & Capone. Mercurio acquired a backhoe for the business in 1973. Capone testified that an insurance policy covering the backhoe went into effect on September 21, 1973, and that two days later Mercurio reported that this piece of equipment had been destroyed by fire.

In the late fall of 1973, Mercurio purchased a piece of property in the city of Warwick for the purpose of relocating his business. The property was originally insured through Kelly & Picerne but was later insured through Boylan & Capone. Capone testified that he issued a fire insurance policy on the property, with Aetna, on July 1, 1974. The building located on the property in question was destroyed by fire on the night of July 4, 1974.

a verdict in favor of Aetna on the issue of such damages.

■ At the outset, we must set forth the standard for reviewing a motion for a directed verdict. It is well settled that

" '[w]hen a motion for a directed verdict is made, the trial court and * * * this court on review must consider the evidence in the light most favorable to the party against whom the motion is made without weighing the evidence or considering the credibility of the witnesses and extract from that record only those reasonable inferences that support the position of the party opposing the motion * * *. If there exist issues of fact upon which reasonable men may differ, the trial court has no alternative other than to let the jury decide them.' " *Fox v. Allstate Insurance Co.,* — R.I. —, —, 425 A.2d 903, 905 (1981) (quoting *Evans v. Liguori,* 118 R.I. 389, 394, 374 A.2d 774, 776 (1977)).

A review of the record, with regard to the question of agency, in the light most favorable to plaintiff, discloses the following facts. Capone was an employee and the president of Boylan & Capone. Boylan & Capone was a party to an agency agreement with Aetna. Under the terms of that agreement, Capone was authorized not only to "solicit proposals" but also "to collect and receipt for premiums, and to bind and execute contracts" for insurance. At the time that the alleged slanderous remarks were uttered, Capone was engaged in accepting notice of a claim of loss from Mrs. Walker.

■ Contrary to Aetna's contention, Capone was more than a mere soliciting agent, as was the case in *daSilva v. Equitable Fire and Marine Insurance Co.,* 106 R.I. 729, 263 A.2d 100 (1970). Rather, Capone had authority to bind Aetna and was in fact an agent of the company for that purpose. *See Overton v. Washington National Insurance Co.,* 106 R.I. 387, 260 A.2d 444 (1970). From this starting point it is necessary for us to determine whether Capone was also acting within the scope of

his agency with Aetna when he accepted notice of Mrs. Walker's claim.

On the basis of the record before us, we cannot say with any degree of certainty that Capone was acting outside the scope of his agency with Aetna when he allegedly slandered Mercurio. Capone testified that Aetna provided him with "property loss notice" forms upon which he recorded information to be submitted to the company. By his own admission, it was part of his job to take information down and pass it on to the company. This function can reasonably be considered to be an action within the scope of Capone's agency with Aetna and on Aetna's behalf.

Some years ago, the Supreme Court of Maine recognized that the act of an insurance agent in furnishing a blank notice-of-claim form to an insured who had suffered a motorcycle accident, after receiving full information about the nature of the claim, was the act of the insurance company. *Tracey v. Standard Accident Insurance Co.,* 119 Me. 131, 133, 109 A. 490, 491 (1920); *see also* 43 Am.Jur.2d *Insurance* § 110 (1982). This case is closely analogous to the case before us. It is our opinion that the proposition of law enunciated therein remains viable and is applicable to the present case.

■ It is well settled that an insurance company may be held liable for the utterance of slanderous words by an agent made in the course of his agency and in the performance of his duties. *See Atkinson v. Equitable Life Assurance Society of the United States,* 519 F.2d 1112 (5th Cir.1975); *Vowles v. Yakish,* 191 Iowa 368, 179 N.W. 117 (1920). When the record before us is viewed in the light most favorable to plaintiff, it is our considered opinion that the trial justice came to the reasonable conclusion that upon the evidence presented, a jury might find that Capone had slandered Mercurio while acting within the scope of his agency with Aetna and in the performance of his duties.

■ We reach a different conclusion, however, with regard to the trial justice's ruling on Aetna's motion for a directed verdict on the question of punitive damages. It has long been the law in this state that punitive or exemplary damages will not be allowed in situations in which a "principal is prosecuted for the tortious act of his servant, unless there is proof in the cause to implicate the principal and make him *particeps criminis* of his agent's act." *Hagan v. Providence And Worcester R.R. Co.*, 3 R.I. 88, 91 (1854). The court also recognized in that case that when the proof does not implicate the principal and when the principal neither expressly nor impliedly authorized or ratified the act, "it is quite enough, that [the principal] shall be liable in compensatory damages * * *." *Id.; see also Staples v. Schmid*, 18 R.I. 224, 232, 26 A. 193, 196 (1893).

The United States Supreme Court has addressed this question in the context of a treble-damage suit under the Sherman Act. *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982). Justice Powell noted in a dissenting opinion joined in by Justices White and Rehnquist that no principal of agency law was more firmly established at the time of the passage of the Sherman Act "or now for that matter—than that *punitive* damages are not awarded against a principal for the acts of an agent acting only with apparent authority and without any intention of benefitting the principal." *Id.* at 588, 102 S.Ct. at 1954, 72 L.Ed.2d at 354. Justice Powell also pointed out that the Court has gone even further,

> "holding more generally that ' "punitive or vindictive damages, or smart money, [are] not to be allowed as against the principal, unless the principal participated in the wrongful act of the agent." '

*Lake Shore & M.S.R. Co. v. Prentice*, 147 U.S. [101] at 114 [13 S.Ct. 261, at 265, 37 L.Ed. 97], quoting *Hagan v. Providence & Worcester R.*, 3 R.I. 88, 91 (1854)." *Id.* at 588–89, 102 S.Ct. at 1954, 72 L.Ed.2d at 354.[2]

■ In the present case, we agree with Justice Powell that there is no reason to depart from the rule of *Hagan*. Viewing the evidence in the light most favorable to plaintiff, therefore, we cannot say that there existed at the time that the trial justice denied Aetna's motion for a directed verdict any issues of fact that the jury could have resolved in favor of plaintiff to return an award of punitive damages against Aetna. There is nothing in the record before us to indicate that Aetna participated in, authorized, or ratified the actions of Capone. Consequently, the trial justice incorrectly denied Aetna's motion for a directed verdict on punitive damages. Since the jury did not award compensatory damages, this ruling is dispositive of Aetna's appeal. We do not, therefore, reach the other arguments made to this court by Aetna.

The defendants Capone and Boylan & Capone raise several issues upon appeal to this court. After careful consideration, we find them all to be without merit.

For the reasons stated, the appeal of the defendant Aetna is sustained, the judgment entered against Aetna below is vacated, and the Superior Court is ordered to enter judgment in its favor. The appeals of the defendants Capone and Boylan & Capone are denied, the judgment entered below is hereby affirmed, and the case is remanded to the Superior Court.

**2.** It is important to note that Chief Justice Burger concurred in the result on the ground that the jury found under unchallenged instructions that the petitioner in that case had " 'ratified or adopted' the conduct in question." *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 578, 102 S.Ct. 1935, 1948, 72 L.Ed.2d 330, 347 (1982). He went on to state that "[o]n that basis the judgment against petitioner should be affirmed but no general rule can appropriately be drawn from the Court's holding." *Id.* at 578, 102 S.Ct. at 1948–49, 72 L.Ed.2d at 347.