Shirley A. RECCKO,

v.

**CRISS CADILLAC COMPANY, INC., et al.**

No. 90–240–Appeal.

Supreme Court of Rhode Island.

May 18, 1992.

J. Ronald Fishbein, Lauren Jones, Jones Associates, Providence, for plaintiff.

John R. Mahoney, Baluch, Mahoney, & Gianfrancesco, Providence, for defendant.

## OPINION

MURRAY, Justice.

This may now be called the thrice-told tale of the "twice-sold 'brand new'" 1980 Cadillac Coupe de Ville.[1] Shirley A. Reccko (Reccko) appears before this court for the third time in connection with her purchase of a car from the defendant Criss Cadillac Company, Inc. (Criss Cadillac). Reccko appeals from a Superior Court or-

---

1. *See Reccko v. Criss Cadillac Co.*, 588 A.2d 615 (R.I.1991); *Reccko v. Criss Cadillac Co.*, 551 A.2d 20 (R.I.1988).

der directing a verdict in favor of Criss Cadillac on her claim for punitive damages. The trial justice directed a verdict in favor of Criss Cadillac after the jury returned a verdict in Reccko's favor, awarding her $50,000 in punitive damages. Criss Cadillac cross-appeals from the trial judge's denial of its conditional motion for a new trial or, in the alternative, a remittitur.

The facts of this case indicate that in the fall of 1980 Reccko and her husband visited Criss Cadillac with the intention to purchase a new Cadillac. During the course of examining various automobiles, the couple became acquainted with a salesman by the name of John Capuano (Capuano). Reccko testified that on that initial visit she did not see a car that was of any interest to her. However, Reccko attested that at some future date Capuano drove a 1980 Cadillac Coupe de Ville to her place of employment to afford her an opportunity to test drive the car. Reccko noticed that the car had "a few hundred" miles on it. In response to her inquiry about the miles, Capuano stated that someone purchased the car and had it over a weekend, but that the check that had been used to purchase the car had been returned due to insufficient funds. Capuano stated that, consequently, Criss Cadillac repossessed the car from that purchaser.

Reccko purchased the car. On November 6, 1980, she signed a purchase order for a new blue Cadillac Coupe de Ville. The bill of sale, which was preprinted with "Criss Cadillac Company, Inc." at the top, specified that the car was "new" and indicated that it had 675 miles on it. Reccko began driving the car. While at work one day, an acquaintance of hers, John F. DiStefano, Sr. (DiStefano), came into her office and told Reccko that her new car looked strikingly similar to one which he had previously purchased. DiStefano and Reccko contacted DiStefano's lawyer, who compared the VIN number from Reccko's car with the VIN number from the vehicle that DiStefano had purchased. The numbers matched. Reccko and DiStefano also obtained a police report reflecting an accident that DiStefano had had with the vehicle, and, again, they found a match with

the VIN number. Finally DiStefano and Reccko examined the vehicle, and found holes in the carpet that had been put there when DiStefano had installed a mobile telephone in the car.

DiStefano testified at trial that he had purchased the Coupe de Ville in the summer of 1980. He had bought the car on a Friday, installed the mobile telephone on Saturday, and had an accident with the car on the following Tuesday or Wednesday. After the accident DiStefano left the vehicle at Hunter's Service Station in Warwick from where, eventually, Criss Cadillac had repossessed it. DiStefano stated that he had, prior to the accident, stopped payment on the check used to buy the car. Because this was done before he received title papers, title to the Cadillac was never in DiStefano's name.

Upon recovering the Coupe de Ville from DiStefano, Criss Cadillac repaired the damage. The vehicle, according to Carl Bowen, Criss Cadillac's service advisor, was damaged in "the front bumper face bar, * * * header panel, grille, [and] maybe a parking light or two." After the repairs were completed, the car was returned to the "new car inventory." This was done pursuant to Criss Cadillac's policy of returning cars with damage deemed by Criss Cadillac to be "superficial" (as distinguished from "major") to the new-car inventory. Richard Douglas (Douglas), the president and sole stockholder of Criss Cadillac, described the difference between "major" and "superficial" damage. He stated that "major" damage refers to structural damage to the car. The term "superficial" damage refers to exterior damage, such as a scrape on the car or a broken windshield. In that instance, the car would be repaired and placed into the new-car inventory.

Upon learning that her new car had previously been owned and had been involved in an accident, Reccko became upset. She contacted the Attorney General and then called Criss Cadillac. She spoke with Douglas. He admitted that the car had been involved in an accident prior to its sale and conceded that she should have been told about it. Negotiations between

Reccko and Douglas ensued but later broke down. Eventually, in January 1981, the car was taken back by Criss Cadillac, and Criss Cadillac paid Reccko the amount of the purchase price.[2]

Reccko brought a deceit action against Criss Cadillac based on the "false representation" that the car was new, when in fact, Capuano and Criss Cadillac knew that the car was not new. Reccko sought compensatory damages in the amount of $261.35, which she claims she lost as a result of her dealing with Criss Cadillac. That amount comprised interest charges of $155.55 on a loan she had taken to purchase the car and an additional insurance premium in the amount of $105.80. Reccko also sought punitive damages.

At the conclusion of all the testimony in the case, Criss Cadillac moved for a directed verdict on the punitive-damages claim. The trial justice reserved her decision on the motion, and the case was sent to the jurors. The jury found in favor of Reccko. Interrogatories to the jury show that they found (1) that Criss Cadillac made misrepresentations of material fact to Reccko knowing that they were false and intending to deceive her and (2) that Criss Cadillac had expressly or impliedly authorized its employee to make false representations to Reccko, or thereafter ratified the employee's conduct. The jury awarded $261.35 in compensatory damages and $50,000 in punitive damages. The trial justice then ruled on the motion for directed verdict. The court granted Criss Cadillac's motion for directed verdict on the issue of punitive damages. The trial justice concluded that there was nothing in the record before her to illustrate that Criss Cadillac participated in, authorized, or ratified the actions of its employee, as is required by our decision in *AAA Pool Service & Supply, Inc. v. Aetna Casualty & Surety Co.*, 479 A.2d 112 (R.I. 1984), to award punitive damages against an employer for the tortious actions of its agent or employee.

Thereafter, Criss Cadillac filed a conditional motion for a new trial or a remittitur on the punitive-damages claim. Reccko filed a motion to reconsider the directed verdict or to alter the judgment. The trial justice heard argument and reserved her decision. On November 22, 1989, the trial justice issued a written decision reiterating her view that the evidence did not support an award of punitive damages and denied Reccko's motion to reconsider the directed verdict or to alter judgment. Criss Cadillac's motions were also denied. Reccko appealed the directed verdict to this court. Criss Cadillac cross-appealed from the denial of the conditional motion for a new trial or in the alternative a remittitur. Additional facts will be set forth as necessary.

The first issue for our consideration is whether the trial court erred when it granted Criss Cadillac's motion for a directed verdict. The standard of review for reviewing a motion for a directed verdict is well settled in Rhode Island. Upon passing on a motion for a directed verdict, the trial court, and this court on review, must consider the evidence in the light most favorable to the nonmoving party, without evaluating its credibility, and must draw all reasonable inferences in favor of the party against whom the motion is made. *AAA Pool Service & Supply, Inc.*, 479 A.2d at 115 (citing *Fox v. Allstate Insurance Co.*, 425 A.2d 903, 905 (R.I.1981)). If there are issues of fact upon which reasonable persons may differ after such review, the motion for directed verdict must be denied and the jury must decide those issues. *Id.*

■ It is well settled that a corporation is liable in compensatory damages for the tortious conduct committed by its agents while acting within the scope of their authority. *Piscitelli v. DeFelice Real Estate, Inc.*, 512 A.2d 117, 119–20 (R.I.1986) (citing *Brimbau v. Ausdale Equipment Rental*

---

**2.** The effect of this transaction was the subject of this court's opinion in *Reccko v. Criss Cadillac Co.*, 551 A.2d 20 (R.I.1988). This court *reversed* a Superior Court summary judgment ruling that a rescission had occurred. We held instead that there was a question of fact as to whether "the litigants had a mutual agreement to rescind the sales contract." *Id.* at 22. At trial below, Criss Cadillac did not raise the issue of rescission, and hence, it is not an issue to be considered on appeal.

*Corp.*, 440 A.2d 1292, 1295 (R.I.1982)). However, in *AAA Pool Service & Supply Inc.*, 479 A.2d at 116, we held the plaintiff to a stricter standard on the issue of punitive damages to be awarded against an employer for the tortious acts of its employee. An employer is liable in punitive damages for the tortious conduct committed by its agent or employee only if the employer participated in, authorized, or ratified the actions of its agent or employee. *Id.* at 116 (citing *Hagan v. Providence And Worcester R.R. Co.*, 3 R.I. 88, 91 (1854)). Thus in the case at bar, if there are issues of fact which the jury could have resolved in favor of Reccko on the issue of whether Criss Cadillac participated in, authorized, or ratified Capuano's actions, then the motion for directed verdict was incorrectly granted.

■ After a careful review of the evidence presented at trial in the light most favorable to Reccko, we are persuaded that the trial justice committed error in granting defendant's motion for directed verdict on the punitive-damages claim. The record is replete with facts upon which reasonable minds may differ on the issue of whether Criss Cadillac participated in, authorized, or ratified the actions of Capuano. For example, the jury was presented with evidence that the Coupe de Ville had been sold to a customer, damaged, repaired by Criss Cadillac, and then returned to the "new car inventory." One can reasonably infer that the act of placing the car in the new-car inventory was the act of Criss Cadillac management, and that such act constituted participation in the fraudulent act of selling the car as "new," knowing that it had been in an accident. Furthermore, had management not been aware that its employee represented the car as being new, the relevant documents, preprinted with Criss Cadillac's name, contained the president of the company's signature, and each of these documents represented the car as new. This conduct can reasonably be inferred to constitute either participation in the fraud or ratification of Capuano's fraudulent conduct. Viewing the evidence in the light most favorable to Reccko, we cannot say that the record is devoid of evidence to support the jury's conclusion that Criss Cadillac participated in, authorized, or ratified the acts of Capuano. Accordingly, we believe the trial justice incorrectly granted Criss Cadillac's motion for directed verdict on the issue of punitive damages.

■ On cross-appeal Criss Cadillac contends that the trial justice erroneously denied defendant's motion for a new trial or, in the alternative, a remittitur on the issue of punitive damages. The defendant argues that the $50,000 punitive-damages award is contrary to well-settled law, against the weight of the evidence, and grossly excessive.

Under Rhode Island law the duty of a trial justice on a motion for a new trial is well established. The trial justice must make an independent appraisal of the evidence, passing upon the weight of the evidence and assessing the credibility of the witnesses. *Sarkisian v. NewPaper, Inc.*, 512 A.2d 831, 835 (R.I.1986). "If the trial justice determines that the evidence and the reasonable inferences to be drawn therefrom are so nearly balanced that reasonable persons could arrive at different results in deciding the case, the new-trial motion must be denied." *Id.* at 835–36. "If, however, the trial justice finds that the jury's verdict is against the fair preponderance of the evidence, he or she must grant the motion for a new trial." *Id.* at 836. Although the trial justice need not perform an exhaustive analysis of the evidence, he or she should refer with some specificity to the facts which prompted him or her to make the decision so that the reviewing court can determine whether error was committed. *Zarrella v. Robinson*, 460 A.2d 415, 418 (R.I.1983). On review of such a ruling, a trial justice's decision will be afforded great weight and will not be disturbed unless he or she overlooked or misconceived material evidence. *Id.*

We have stated that this standard of review is applicable when the question on the motion for a new trial concerns an award of excessive punitive damages. *Zarrella*, 460 A.2d at 418. Although the fixing of damages is normally a function of

the jury, it may be rejected by a trial justice on a motion for a new trial. In the alternative, a remittitur may be accomplished if the trial justice concludes, after passing upon the evidence, that the plaintiff is not entitled to such an award or that the award is unreasonable in light of the evidence presented at trial. *Id.* at 418 (citing *Mouchon v. Erikson's Inc.*, 448 A.2d 776, 779 (R.I.1982)). The trial justice may reject the award or order a remittitur of the award if it shocks the conscience or it "clearly appears to be excessive, or to represent the passion and prejudice of the jury rather than their unbiased judgment." 460 A.2d at 418–19 (quoting *McFetters v. Cardone*, 47 R.I. 144, 146, 131 A. 385, 385 (1926)).

■ As previously stated, we conclude that the evidence and reasonable inferences to be drawn therefrom present issues of fact upon which reasonable minds may differ as to whether punitive damages should be awarded in this case. Thus we affirm the trial justice's order denying the defendant's motion for a new trial on the issue of whether punitive damages should be awarded. We believe that relitigation of that issue would serve no useful purpose and would be contrary to the principles of sound judicial administration. However, we come to a different conclusion on the issue of whether the amount of the punitive damages awarded by the jury was reasonable in relation to the evidence presented at trial. Reccko was reimbursed the full amount of the purchase price of the car, and she was awarded compensatory damages for her out-of-pocket expenses. Upon consideration of those facts, in addition to other evidence of record, we are of the opinion that a $50,000 punitive-damages award in this case shocks the conscience and is grossly excessive. Thus we believe that, in light of record evidence, a remittitur of the punitive-damages award to $25,000 would fairly and amply compensate Reccko. We are of the opinion that this reduced amount should assure the defendant that any prejudice that may have resulted had the jury's award been tainted by exaggerated sympathy or passion or prejudice has been eliminated.

For the reasons stated, the plaintiff's appeal is sustained. We reverse the trial justice's ruling on the motion for directed verdict. We vacate the judgment and reinstate the jury's verdict on the issue of punitive damages, reduced by a remittitur of $25,000. We affirm the trial justice's denial of the defendant's motion for a new trial. The case is remanded to the Superior Court.