DECISION
This matter is before the Court on Plaintiffs Freda L. Volpe, Individually, as Executrix of the Estate of Alan A. Volpe, and as Natural Parent and Next Friend of Elizabeth A. Volpe, a Minor, and Michael A. Volpe's motion for new trial pursuant to Rhode Island Superior Court Rule 59 (a)(1). Defendants Jean F. Smith M.D. and Medicine Associates, Ltd. moved for new trial, and alternatively renew their motion for judgment as a matter of law pursuant to Rhode Island Superior Court Rule 50.
Plaintiffs Freda, Elizabeth and Michael Volpe brought this action against Defendants Jean Smith, M.D., and Medicine Associates, LTD., under a medical negligence theory for the untimely death of Alan Volpe. They alleged that Defendant Jean Smith, M.D. negligently failed to properly test, diagnose and follow-up with Alan Volpe, and that this failure caused his untimely death. The matter was tried before a jury. The jury returned a verdict for the Plaintiffs, finding Dr. Smith negligent in her care and *Page 2 
treatment of Alan Volpe from September 1999 to November 2001. However the jury found that Dr. Smith's negligence was not the proximate cause of Alan Volpe's death.
The Plaintiffs claim pursuant to Super. R. Civ. P. 59(a)(1) that a new trial should be granted on the issue of proximate causation because:
 (a) The jury's verdict as to causation was against the weight of the evidence. The plaintiffs claim only they presented evidence on causation through two expert witnesses. These experts concluded that Defendant Smith's negligent failure to test Alan Volpe for coronary artery disease in January 2001 caused his death in November 2001.
 (b) The jury's verdict fails to do justice to the Plaintiffs or respond to the merits of the controversy because, the Plaintiffs argue, the Defendants did not present any evidence to contest Plaintiffs' theory of causation.
The Defendants subsequently filed joint conditional motions for a new trial, pursuant to Super. R. Civ. P. 59(a)(1), and for reconsideration of Defendant Smith's motion for judgment as a matter of law pursuant to Super. R. Civ. P. 50. The latter motion to be considered only if the Plaintiffs' motion for a new trial on the issue of proximate causation is granted. The Defendants' motions concern the standard of care for Defendant Jean Smith, M.D.
Superior Court Rule 59(a), provides that a "new trial may be granted to all or any of the parties and on all or part of the issues, (1) in an action in which there has been a trial by jury for error of law occurring at the trial or for any reasons for which new trials have heretofore been granted in actions at law. . . ruling on a motion for a new trial, the trial justice's role is that of "super juror," and in reviewing evidence, should "assess *Page 3 
[its] weight" and the "credibility of the witnesses" to draw all "reasonable inferences therefrom." See Candido v. University of RhodeIsland, 880 A.2d 853 (R.I. 2005); Blue Coast, Inc. v. Suarez Corp.Industries, 870 A.2d 997 (R.I. 2005). If reasonable minds could differ on the verdict, then the trial court should sustain the jury's verdict.See Crafford Precision Products Co. v. Equilasers, Inc., 850 A.2d 958
(R.I. 2004); see also Turgeon, 388 A.2d 1172. If, however, the court's independent judgment tells it the verdict is wrong because it fails to respond "truly to the merits" and to administer "substantial justice" between the parties or is against the "fair preponderance of the evidence," the court should set aside the jury's verdict and order a new trial. See Turgeon, 388 A.2d 1172.
 Jury Instructions
The Court, in order to properly weigh "all of the material evidence," must look at the case "in light of [its] charge to the jury."Id. The court read and submitted to the jury written instructions for the jury's use while deliberating. Within the section labeled "Expert Testimony,"[1] the jury was instructed that while it "forms a class by itself,"[2] expert testimony "does not enjoy a preferred status,"[3]
and is not "conclusive or controlling."[4] Rather, "it is submitted for [the jury's] assistance and for whatever [the jury thinks] it might be worth."[5] Furthermore, the jury is "not bound to accept the statements or conclusions of any expert witness,"[6] and the weight to be given such is a matter "solely for [their] determination."[7] *Page 4 
Proximate cause was defined in the instructions to the jury as "a cause which in a natural, continuous, and unbroken sequence produces an event or injury and without which the event or injury would not have occurred."[8] The Court further elaborated, stating "to establish such [proximate] causation as to [the Defendant], the Plaintiffs must establish, by a preponderance of the evidence, that but for a deviation from the standards of care on the part of [the Defendant], it is more likely than not that the death of Alan Volpe and damages to the Volpes would not have occurred."[9]
 Discussion
The Plaintiff's first argument is that it was the only party to present evidence regarding causation. This evidence, as this argument is submitted, was presented through the testimony and exhibits of two expert witnesses, Doctors Schulman and Laposata. The experts' testimony concluded that the injuries to Alan Volpe were more likely than not a "proximate result of a deviation from the standard of care by Dr. Smith," that: (1) Alan Volpe ultimately died from heart disease; and (2) had developed said "coronary artery" disease as of January of 2001.[10] Had appropriate tests been performed during that time, the Plaintiffs argue, several treatments, one or more of which would have been successful in preventing Alan Volpe's death in November, 2001, would have been available.[11]
While the Court agrees that the Plaintiffs have produced evidence regarding the cause of Alan Volpe's death, and a jury could reasonably infer from such evidence that Dr. Smith's negligence was a proximate cause of that death, the Court does not agree that the Plaintiffs presented the only evidence regarding causation, and that, in light of the *Page 5 
Defendants' proffer, no "reasonable minds could differ." SeeTurgeon. Nor does this Court agree that the Defendants never challenged the Plaintiffs' evidence regarding causation, which is the second argument that the Plaintiffs raise. The Court examines each in turn
The Plaintiff, Freda Volpe, testified regarding pain that Alan Volpe was experiencing in his chest two to four days before his death on November 16, 2001. This pain was not made aware to Defendant Smith prior to Alan Volpe's death. The Defendants, on cross examination of the Plaintiffs' experts, elicited testimony regarding causation, and on the issue of Alan Volpe's chest pain, elicited testimony from Dr. Schulman that the "90 percent occlusion or blockage" that caused the "myocardial infarction" only occurred "a few days before" the acute heart attack.[12] This blockage, which likely occurred shortly before Alan Volpe's death, and which required him to sleep "bolt upright" two to four days before his death in November, was not communicated to the Defendants. Further, during the cross-examination of Dr. Schulman, causation issues regarding symptoms of Alan Volpe's coronary artery disease were raised through the so-called "cholesterol letter," which could have drawn the "reasonable inference" that signs of the disease dated as far back as 11 years prior to Dr. Smith's treatment. While standing alone, this evidence does not necessarily invalidate the Plaintiffs' evidence regarding causation, it does present itself as showing that Defendant Smith was not alerted to the possibility of a major medical risk right before Alan Volpe's death; that Mr. Volpe was "non-compliant" in his own care since 1988; and, more importantly, that the Defendants did present evidence regarding causation. *Page 6 
The Plaintiffs' second argument fails for much of the same reason the first one does. Much of the Defendants' causation evidence was produced, not through their own witnesses, but on cross examination of the Plaintiffs' expert witnesses. The testimony regarding Alan Volpe's new chest pain was itself elicited by the Plaintiff, Freda Volpe. Furthermore, the Defendants' cross-examination of the Plaintiffs' experts, more notably Dr. Schulman, challenges the Plaintiffs' evidence regarding causation. Indeed, the Plaintiffs' own motion cites several topics the Defendants cross-examined Dr. Schulman on, including "Alan Volpe's history of hypercholesterolemia,"[13] "chest pain,"[14] the "cholesterol letter,"[15] and other causes. Again, while this does not necessarily prove one cause over another, the Plaintiffs cannot reasonably argue that causation was not contested at trial, and that Defendants presented no evidence challenging the Plaintiffs.
The third issue the Plaintiffs raise is that their causation evidence was credible and cannot be ignored. Here, the Plaintiffs argue that such causation evidence, as presented through the expert witnesses, may not be rejected since it was the only causation evidence presented and was not impeached by the Defendants. Again, referring to the Plaintiffs' motion, there were several areas addressed during Defendants' cross-examination of Dr. Schulman, including his "prior testimony in other cases,"[16] his "specialty of cardiology,"[17] and Dr. Schulman's "testimonial history" and "rate of compensation,"[18]
offered by Defendants to cast doubt on Dr. Schulman's credibility. Based upon all the testimony elicited, "reasonable minds could differ" on the "credibility *Page 7 
of witnesses," namely Dr. Schulman, and reviewing the case "in light of the Court's charge to the jury," the jury was not required to find such testimony "conclusive or controlling." Rather, the testimony was submitted for the jury's "assistance," and in considering what such testimony "might be worth," the jury could have credited Dr. Schulman's conclusions with the utmost confidence, or zero confidence, as a result of the testimony elicited by the Defendants on cross-examination. In any case, the causation evidence regarding Alan Volpe's death was such that "reasonable minds could differ," and was not against the "fair preponderance of the evidence."
Therefore, while this Court would not disagree that, but for a deviation from the standards of care on the part of Dr. Smith, it is more likely than not that Alan Volpe's untimely death would not have occurred, neither is this Court prepared to say that, after "considering the evidence," it is such that different minds could not "naturally and fairly come to different conclusions thereon." See Fox v. Allstate Ins.Co., 425 A.2d 903 (R.I. 1981). Furthermore, it is not for this Court to vacate a jury's verdict "even against doubts as to its correctness," where, as here, there was "any competent evidence which sustains the jury's verdict." Id.
The Plaintiffs' motion for a new trial fails, and the jury's verdict as to causation is allowed to stand because the Court, in considering "all of the material evidence" in the case "in light of the court'scharge to the jury," including the testimony of Freda Volpe, Dr. Laposata and Dr. Shulman, finds the evidence is such that "reasonable minds could differ." See Turgeon v. Davis, 388 A.2d 1172 (R.I. 1978) (Emphasis added). *Page 8 
 Conclusion
For the foregoing reasons, the Plaintiffs' motion for a new trial on the issue of proximate causation is hereby DENIED. As a result, the Defendants' conditional motions for a new trial and judgment as a matter of law on the issue of Defendant Smith's standard of care are likewise DENIED.
Counsel shall prepare an order consistent with this Decision.
[1] Jury Instruction at 8
[2] Id.
[3] Id. at 9
[4] Id. at 10
[5] Id.
[6] Id.
[7] Id.
[8] Id. at 14-15
[9] Id. at 23
[10] July 13 Tr. At 30-31
[11] Id. at 39-41
[12] July 14 Tr. at 51
[13] July 13 Tr. at 72-83
[14] July 13 Tr. at 89-97
[15] July 14 Tr. at 2-9
[16] July 13 Tr. at 50-54
[17] July 13 Tr. at 54-58
[18] July 14 Tr. at 53-60