**Raymond SOUSA**

v.

**Rosalind CHASET, in her capacity as Executrix of the Estate of Nathan Chaset, M.D.**

**Nos. 84–229–Appeal, 84–324–Appeal.**

Supreme Court of Rhode Island.

Jan. 16, 1987.

John P. Garan, Providence, for plaintiff.

David W. Carroll, Roberts Carroll Feldstein & Tucker, Inc., Providence, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal from a directed verdict in a medical malpractice case. The plaintiff had alleged three counts: negligent diagnosis, res ipsa loquitur, and lack of informed consent.

In May of 1977, plaintiff was hospitalized for treatment of depression. His treatment included the administration of certain

medications to control his depression. During his hospitalization, he had difficulty urinating and was examined by Dr. Nathan Chaset, who was a urologist employed by Urologic Services, Inc. After an initial examination, Dr. Chaset scheduled two surgical diagnostic tests—a cystoscopy and a urethroscopy—to ascertain the source of plaintiff's complaints. A cystoscopy is an examination of the bladder through a surgical instrument. A urethroscopy is a similar examination of the urethra. The plaintiff consented to these procedures after Dr. Chaset assured him no external surgical incision would be made.

A few days before plaintiff's scheduled tests, Dr. Chaset was called out of town on a family emergency. He asked Dr. Harry Iannotti, another physician working for Urologic Services, Inc., to call plaintiff. Doctor Iannotti phoned plaintiff and asked him if he would prefer to be admitted to the hospital on the scheduled date with Dr. Iannotti as the treating physician, or if he would rather have the procedures rescheduled after Dr. Chaset returned from his family emergency. The plaintiff agreed to be admitted with Dr. Iannotti as the treating physician.

After reviewing plaintiff's history from Dr. Chaset's notes, Dr. Iannotti examined plaintiff and attempted to pass a urethroscope through the plaintiff's meatus, which is the opening of the urethra. The doctor was unable to pass the instrument due to the narrowing of plaintiff's meatus. Doctor Iannotti diagnosed meatus stenosis and performed a surgical procedure, a meatotomy, to enlarge the meatus. This was a separate procedure from the diagnostic procedures scheduled. After the surgery, plaintiff developed numerous complications including irritation of the penis and irregular urinary spray.

## I

### THE MOTION TO JOIN ADDITIONAL PARTIES

 The plaintiff's first contention is that the trial court erred in not granting

his motion to join Dr. Iannotti and Urologic Services, Inc. as necessary parties, pursuant to Rule 19 of the Superior Court Rules of Civil Procedure. The trial court denied the motion because plaintiff had filed his complaint in the action five and a half years earlier but waited until just four days before trial to move to join parties that he had known for years to be potential defendants.

Rule 19 mandates that "persons having a joint interest which is not also a several interest shall be made parties." Rule 20 allows that "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief * * * arising out of the same transaction [or] occurrence * * *." The first rule pertains to necessary joinder of parties, the second to permissive joinder.

Here, plaintiff moved under Rule 19 to join necessary parties. For plaintiff to prevail on appeal, he must show that the trial court erred in not granting his Rule 19 motion because Dr. Chaset, Dr. Iannotti and Urologic Services, Inc. were jointly, and not severally, liable. If the parties have several liability, then Rule 20 was the rule upon which plaintiff's motion should have been based, and it was in the court's discretion not to grant such a motion, particularly on the eve of a trial that had been pending for half a decade.

The plaintiff argues that Dr. Chaset and Dr. Iannotti were partners by estoppel because, plaintiff alleges, Dr. Iannotti had represented to plaintiff that he and Dr. Chaset were "partners." The evidence produced at trial, however, proves otherwise. On the date of plaintiff's operation, Dr. Iannotti and Dr. Chaset were both employees of Urologic Services, Inc., which had been incorporated some ten months prior. They worked in office space which was rented by the corporation; the utilities and office overhead were paid for by the corporation. The doctors had employment contracts with the corporation and received

their salaries from the corporation. The doctors were not partners at any time during which they treated plaintiff. Nor is there any evidence, other than plaintiff's allegation, that Dr. Iannotti represented himself and Dr. Chaset to plaintiff as partners.

For these reasons, the liabilities of Dr. Chaset, Dr. Iannotti and Urologic Services, Inc. were several, and the mandatory language of Rule 19 does not apply to them. Hence, it was not an abuse of discretion for the trial court to deny plaintiff's motion.

## II

### THE MOTION FOR DIRECTED VERDICTS

At the close of plaintiff's case, defendant moved for directed verdicts on all three counts. The trial court granted the motion, and plaintiff appeals this decision.

In considering a motion for a directed verdict, the trial court should review the evidence in the light most favorable to the nonmoving party without weighing the evidence or the credibility of the witnesses, and extract from the record only the reasonable inferences that support the nonmoving party's position. If, after such review, the court finds no issues upon which reasonable persons might draw conflicting conclusions, the court should grant the motion. On appeal, we use the same criteria in reviewing the motion. *Powers v. Carvalho*, 117 R.I. 519, 524–25, 368 A.2d 1242, 1246 (1977).

### Negligence

■ The plaintiff alleged three causes of action stemming from his surgery: negligence, res ipsa loquitur and lack of informed consent. To sustain a cause of action in negligence, a plaintiff must "establish a standard of care as well as a deviation from that standard." *Marshall v. Tomaselli*, 118 R.I. 190, 196, 372 A.2d 1280, 1283 (1977). This court has said, in describing a physician's standard of care, that

"[a] physician is not a guarantor of either a correct diagnosis or a successful course of treatment. While there is no duty to cure, a physician is bound to exercise the same degree of diligence and skill as physicians in good standing engaged in the same type of practice in similar localities in like cases. We have repeatedly said that, as a general rule, a departure from this standard of care, whether it be at the diagnostic or treatment stage, must be established by expert testimony, except if the lack of care is so obvious as to be within the [layperson's] common knowledge." *Young v. Park*, 417 A.2d 889, 893 (R.I.1980).

Here, plaintiff provided no expert testimony to show how anything Dr. Chaset had done departed from the standard of care that he should have provided. The plaintiff's urological condition, and the treatment he received or should have received for the same, were matters beyond the obvious common knowledge of the jury. The diagnostic tests of a urethroscopy and a cystoscopy, the surgical procedure of a meatotomy, and the possible or probable side effects of specific medications plaintiff was taking, are all matters beyond the ordinary knowledge of laypersons. For example, though laypersons might be expected to know that medications have side effects, they cannot be expected to know that a particular medication such as Sinequan, which plaintiff was taking, can cause side effects such as urinary retention. Expert testimony is needed to explain such specifics, *as well as what proper procedures and alternatives are available* to a physician once it has been established that a patient's condition was caused by medication. Expert testimony is then needed to show why the procedures followed by the defendant physician were negligent, *and not legitimate*, alternatives.

■ The plaintiff did try to solicit expert testimony by subpoenaing a urological expert, Dr. John Lawlor, to testify. The doctor, however, did not wish to testify on behalf of plaintiff. The doctor knew little

about the case (he was not plaintiff's treating physician), and objected to testifying. The trial court properly sustained Dr. Lawlor's objection because, as we explained recently in *Ondis v. Pion,* 497 A.2d 13, 18 (R.I.1985), and some time ago in *L'Etoile v. Director of Public Works of Rhode Island,* 89 R.I. 394, 153 A.2d 173 (1959), it is the obligation of the party desiring expert testimony to obtain the services of a qualified individual on a voluntary basis. An expert who has not been engaged, but only subpoenaed, cannot be compelled to give opinion testimony against his or her will.

Since no other expert testimony was presented to show how Dr. Chaset may have violated any duty of care owed to plaintiff, the trial court properly directed a verdict for defendant on the negligence count.

### Res Ipsa Loquitur

■ In establishing a negligent event, the doctrine of res ipsa loquitur is available to a plaintiff who can satisfy three elements: (1) the event must be of a kind that does not ordinarily occur in the absence of negligence; (2) the agency or instrumentality causing the event must have been within the exclusive control of the defendant; and (3) the event must not have been due to any voluntary act or contribution on the part of the plaintiff. *Montuori v. Narragansett Electric Co.,* 418 A.2d 5, 13 (R.I. 1980). Here, the event, the side effects from a surgical operation known as a meatotomy, may well occur in the absence of negligence. There are obviously legitimate purposes for such surgery. Further, Dr. Iannotti, and not Dr. Chaset, was the agent controlling the event. Doctor Chaset was not even in the State of Rhode Island at the time Dr. Iannotti decided to perform the meatotomy. Hence, the trial court properly directed a verdict on the res ipsa count.

### Lack of Informed Consent

■ The plaintiff's third count alleges that the surgery performed on him was done without his consent. Even were this true, plaintiff still has no cause of action against Dr. Chaset. Doctor Chaset promised plaintiff that he would not perform surgery on plaintiff and Dr. Chaset did not in any way violate his promise. It was Dr. Iannotti who performed the surgery; Dr. Chaset was out of state at the time.

The plaintiff's theory is that Dr. Chaset is vicariously liable for Dr. Iannotti's surgical decisions. The plaintiff's vicarious-liability theory fails, however, because there was no evidence showing that Dr. Chaset and Dr. Iannotti were the agents or employees of each other. To the contrary, as was stated earlier, they were both employees of Urologic Services, Inc. Hence, the trial court properly directed a verdict on this count.

### III

### THE MOTIONS FOR A NEW TRIAL

■ After the trial court had directed verdicts in favor of defendant, plaintiff moved under Rule 59 for a new trial. The trial court denied the motion on the ground that the court lacked the jurisdiction to entertain the motion.

In *Izzo v. Prudential Insurance Co. of America,* 114 R.I. 224, 228, 331 A.2d 395, 397 (1975), we said that a trial court has no authority under Rule 59 to consider a motion for a new trial in a case once it has directed a verdict in that case. Since the trial court in this case had directed verdicts on all counts, it was correct in not considering plaintiff's motion.

■ The plaintiff has also moved, pursuant to G.L.1956 (1985 Reenactment) § 9–21–5, for this court to grant him a new trial. The plaintiff, however, has produced no new evidence supporting his claim. And since the trial court's rulings on the law and its perception of the evidence were not erroneous, we find no basis on which to grant the motion. It is, therefore, denied.

### IV

### THE CONSTITUTIONAL ARGUMENTS

■ Finally, plaintiff raises the claims that two statutes, G.L.1956 (1985 Reen-

actment) §§ 9–19–32 and 9–19–33, pertaining to informed consent and res ipsa loquitur, are unconstitutional. These claims were not raised below.

In *Drake v. Popinski*, 414 A.2d 468, 469 (R.I.1980), we stated "the general principle that this court will not act on constitutional issues unless they have first been properly submitted on the record to the trial justice." We see no reason to deviate from that general principle here.

We have examined the remaining contentions advanced by the plaintiff and conclude that they are without merit.

For these reasons, the plaintiff's appeal is denied and dismissed. The judgments appealed from are affirmed. The papers of the case are remanded to the Superior Court.