Neil F. COFFEY et al.

v.

AMERICAN CANCER SOCIETY et al.

No. 86–476–Appeal.

Supreme Court of Rhode Island.

Feb. 22, 1988.

Thomas W. Kelly, Newport, Leonard Decof, Decof & Grimm, Richard D. Prentiss, Providence, for plaintiffs.

Edward L. Gnys, Jr., Gunning, LaFazia & Gnys, Inc., Providence, B. Mitchell Simpson, Callahan & Sayer, Newport, for defendants.

## OPINION

FAY, Chief Justice.

The plaintiffs in this action, Neil F. Coffey and his wife, Diane C. Coffey, acting individually and as the representatives of their four children, appeal from a directed verdict and a jury verdict in favor of the defendants. They also appeal the partial denial of their motion for a new trial.[1] The American Cancer Society, Rhode Island Division, Inc. (Cancer Society) and Derby Enterprises, Inc. (Derby) constitute the defendants. They appeal the trial justice's

---

1. The trial justice denied the plaintiffs' motion for a new trial as against another defendant at trial, Mason Phelps, Jr. Phelps does not appear as a defendant in the appeal.

grant of the plaintiffs' motion for a new trial.

This action arises from a car accident that occurred on September 11, 1983. While driving home from an afternoon spent attending the International Jumping Derby, Michael Faria's vehicle collided with the Coffey vehicle. The accident caused severe front-end damage to the Coffey vehicle in addition to catastrophic injuries to the parents and two children of the Coffey family. The youngest two Coffey children escaped the accident with minor physical injuries.[2] Bringing claims under G.L. 1956 (1976 Reenactment) § 3–11–1 (Dram Shop Act),[3] and common-law negligence, plaintiffs initiated a lawsuit against the several parties responsible for the issuance and transfer of the liquor license to Derby for the event, in addition to those parties accountable for the specific sale of liquor to Faria.

The International Jumping Derby is a four-day equestrian competition held annually at Glen Farm in Portsmouth, Rhode Island. In previous years Derby, the corporation that organized the event, had qualified for a nineteen-hour retailer's liquor license. Pursuant to an amendment in 1983, however, Derby no longer qualified for such a license.[4] Derby's president, Mason Phelps, Jr., contacted a representative of the Cancer Society to enlist the aid of the charitable corporation in obtaining a license. The Cancer Society procured the license and transferred it to Derby. Alcoholic beverages consequently were available to derby patrons. Guests affiliated with the event were given badges entitling them to free admission and beverages. Other spectators paid an entrance fee and purchased refreshments.

Faria's friend, who worked and lived at Glen Farm, secured three or four exhibitor badges from a Derby secretary and gave one of them to Faria. At trial Faria stated that he used the badge to obtain beer and champagne at no charge throughout the afternoon. Several witnesses testified that Faria appeared to be intoxicated, and some observed him driving erratically in the parking area, executing high-speed 360–degree rotations ("donuts") with his car. Although police officers attempted to stop him, Faria sped off. Approximately one mile away on East Main Road, Faria crashed into the Coffeys' automobile.

At the close of plaintiffs' case, the trial justice directed a verdict for defendants on the dram-shop violations. Rather than prove that defendants had sold liquor to Faria, as the statute requires, plaintiffs' evidence indicated only that defendants furnished liquor to Faria. The trial justice reserved ruling on motions for directed verdicts on the negligence counts according to Rule 50(b) of the Superior Court Rules of Civil Procedure.

The trial concluded after approximately seven weeks of testimony. Following defendants' final argument and during plaintiffs' closing remarks, however, plaintiffs moved to reopen the trial. Counsel offered to produce a new witness who would testify that he had observed Faria purchase bottled beer at the derby. The trial justice denied plaintiffs' motion to reopen, as well as their motion to pass, relying in part on his concern for permitting the defense adequate time to prepare for the new testimony. Determining that plaintiffs had exemplified due diligence in the discovery process and that the proffered evidence would

---

2. In a separate criminal action, under G.L. 1956 (1982 Reenactment) § 31–27–1.1, as amended by P.L. 1983, ch. 184, § 1, Faria was convicted of driving so as to endanger, resulting in personal injury. At the time of the civil action, Faria was serving eighteen months of a five-year sentence. The plaintiffs entered a settlement agreement with Faria's insurance company. As a result of that agreement, judgment on counts one through eleven of plaintiffs' third amended complaint was entered, and Faria was dismissed as a defendant prior to trial.

3. Public Laws 1986, ch. 537, § 1, repealed G.L. 1956 (1976 Reenactment) § 3–11–1. For present provisions of law see Rhode Island Liquor Liability Act, G.L. 1956 (1987 Reenactment) §§ 3–14–1 through 3–14–15.

4. General Laws 1956 (1976 Reenactment) § 3–7–14.1, as amended by P.L. 1983, ch. 309, § 1, Class F–1 license, reads in pertinent part: "Said license may be issued to religious organizations, Rhode Island non-business corporations and political corporations only * * *."

dramatically affect the verdict, the trial justice granted a new trial on the ground of newly discovered evidence in regard to all defendants except one. *See* Super.R. Civ.P. 59(a).

The plaintiffs premise their appeal on that one denial, and defendants appeal the granting of the new trial against them.[5] After the jury found for Phelps, the judge granted the reserved directed verdict for Phelps. This parallels the procedural stance for defendants' appeal of the granting of a new trial: after the jury found for defendants on the common-law-negligence counts, the judge granted reserved directed verdicts in their favor. Our reasoning will therefore apply to the arguments of both parties.

Among their several grounds for appeal, defendants contest the characterization of the proffered evidence as pertinent to the Dram Shop issue. The defendants assert that plaintiffs are introducing a new issue on appeal. The plaintiffs had relied on service of alcohol as their theory of recovery under the statute, and they never sought to prove the requisite sale of liquor. The defendants further argue that the trial justice erred in granting a new trial without holding an evidentiary proceeding to assess the credibility of the new witness. The defendants also question the timeliness of the appeal, whether from the directed verdicts for the dram-shop allegations or the combined jury and directed verdicts for the common-law-negligence counts.

We disregard plaintiffs' appeal and defendants' first two grounds of appeal. Terminating the legal argument at an earlier stage, we do not reach these distinctions. Rule 59(a) states in pertinent part:

"A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have hereto-

fore been granted in actions at law in the courts of this state * * *."

Courts have traditionally granted new trials on the basis of newly discovered evidence. Rhode Island precedent, however, clearly prohibits a trial justice from granting a Rule 59(a) new trial regarding an issue as to which he has previously directed a verdict. *Sousa v. Chaset*, 519 A.2d 1132 (R.I.1987). In *Izzo v. Prudential Insurance Company of America*, 114 R.I. 224, 229–30, 331 A.2d 395, 398 (1975), this court examined the statutory predecessor to Rule 59 and Rhode Island case law, and we construed Rule 59 as prohibiting a new-trial motion when made to correct an error of law that occurred at trial. We define a directed verdict as a question of law for the trial justice that depends on his assessment of the facts. When directing a verdict, a trial justice "must consider the evidence in the light most favorable to the party against whom the motion is made without weighing the evidence or considering the credibility of the witnesses and extract from that record only those reasonable inferences that support the position of the party opposing the motion * * *." *AAA Pool Service & Supply, Inc. v. Aetna Casualty and Surety Co.*, 479 A.2d 112, 115 (R.I.1984) (quoting *Evans v. Liguori*, 118 R.I. 389, 394, 374 A.2d 774, 776 (1977)). This factual underpinning of a directed verdict may have caused uncertainty as to whether the precedent would apply.

Therefore, we hold that a directed verdict is based upon a determination of law and not of fact. The *Izzo* doctrine that a motion for new trial does not lie after the direction of verdict applies to the instant case. Consequently, the motion for a new trial had no relevance to the issues upon which the verdict had been directed. As we suggested in *Izzo*, a motion for new trial following a directed verdict is a nullity.[6]

5. Evidence at trial indicated that Mason Phelps, Jr., acted as agent for the disclosed principal Derby throughout his relationship with the Cancer Society. The jury, having found that Phelps did not furnish any intoxicating beverage to Faria, returned a verdict in Phelps's favor.

6. The procedural law of some states permits parties to present issues of law in addition to factual questions in a motion for a new trial. *See, e.g.,* Mass.R.Civ.P. Rule 59(a), 43B M.G.L.A. (West 1978). The majority of codifications, however, retain the common-law rationale of giving the trial court an opportunity to reexam-

■ In respect to the issues submitted to the jury, namely the negligence counts, a motion for new trial could properly have been granted. This motion could have been premised, inter alia, on newly discovered evidence. The difficulty in this case, however, is due to the fact that the newly discovered evidence did not relate to the negligence issues, but only to the Dram Shop issues. As a matter of fact, the motion for new trial on the ground of newly discovered evidence was irrelevant to the issues submitted to the jury.

In the procedural posture which resulted from the direction of a verdict on the Dram Shop issue by the trial justice, the only appropriate remedy for the plaintiff would have been to move pursuant to Rule 60(b)(2), to be relieved from the judgment by reason of newly discovered evidence. Such a motion might have been filed at any time within one year from the entry of judgment on the directed verdict. No such motion was made during that time period, nor at any time thereafter.

■ The motion for new trial related solely to the negligence issues admitted to the jury and was premised upon Rule 59(a). This motion, consequently, did not toll the time for appeal from the direction of verdict on the Dram Shop issue. Judgment was entered on the Dram Shop issue February 26, 1986. The plaintiffs filed their appeal on May 27, 1986, thereby exceeding the time limit by more than three months even at that time. However, a motion for relief from final judgment under Rule 60(b)(2) could have been entertained by the Superior Court, at any time within a year from entry of the directed verdict judgment.

We are therefore confronted with a judgment on the Dram Shop issue which was not appealed within the 20–day time limit and to which the purported motion for new trial was not relevant or legally cognizable. Consequently we are constrained to hold that said judgment may not be challenged within the framework of this appeal.

For these reasons the appeals of the defendants from the granting of the motion for a new trial are sustained, and the appeals of the plaintiffs are denied and dismissed. The order granting the new trial is reversed, and the directed verdicts and jury verdict are affirmed. The papers of the case are remanded to the Superior Court.

MURRAY and WEISBERGER, JJ., did not participate.

ine an issue of fact in order to correct errors that occurred in the preceding trial. 58 Am. Jur. 2d *New Trials* § 1 (1971); *see also* 11 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 2803 (1973).