Everett R. JAMESON et al.

v.

Dwain L. HAWTHORNE et al.

No. 92–571–Appeal.

Supreme Court of Rhode Island.

Jan. 12, 1994.

Peter Cosel, Newport, for plaintiffs.

Christopher Boyle, Joseph Nicholson, Jr., Newport, Paul Anderson, Anderson, Anderson & Zangari, Providence, for defendants.

## OPINION

MURRAY, Justice.

This matter came before this court pursuant to an order requiring all the parties to appear and show cause why this appeal should not be summarily decided. The plaintiffs appeal from a Superior Court judgment on a directed verdict entered in favor of Dwain L. Hawthorne, in his capacity as director of finance for the city of Newport (Newport). They also appeal from a Superior Court judgment on a jury verdict in favor of the two remaining defendants, William Lincourt (Lincourt) and the Edward King House Senior Center (senior center) and the denial of their motion for a new trial.

On the morning of June 14, 1986, six-year-old Stephen Jameson (Jameson) and his mother went to a bazaar at the senior center, which is located on city-owned property in Newport. Jameson was waiting to play a "bean-toss" game in the senior center's side yard when the game suddenly fell on him. His left leg was fractured and required surgery. He was later placed for approximately six weeks in a cast that started at his waist and extended down half of his right leg and his entire left leg. He had to use crutches and required several months of gait-remediation instruction and physical therapy.

Lincourt, who had built the game years before the accident, testified that the game consisted of a four-foot by eight-foot sheet of plywood ⅝ inches thick, with uprights secured by a magnet and a hinge. Six holes were cut out of the sheet for players to throw bean bags through and hit a target. At the back of the plywood sheet two pieces of wood connected by a crosspiece allowed the board to be set up like a tripod. On the day of the bazaar, Lincourt also placed a four-foot by eight-foot sheet of ⅝ inch plywood on the back of the frame. This was the first occasion on which he used the plywood board on the back of the game.

Lincourt speculated in his testimony that the wind had caused the game to fall. Jameson's mother also testified that it appeared that a gust of wind had blown the game down.

Mildred and Everett Jameson filed a complaint in June 1988 on their behalf and as next friends and guardians on behalf of their minor son Jameson and his minor brother, Douglas, in connection with this accident. They alleged that Jameson sustained injuries as a proximate result of the negligence of several defendants in constructing and maintaining the bean-toss game at the senior center's bazaar. The plaintiffs sought damages for personal injuries that Jameson suffered as a result of the accident, as well as loss of society and companionship on behalf of Mildred, Everett, and Douglas Jameson.

The jury trial took place in the fall of 1992. After plaintiffs had rested their case, the trial justice granted Newport's motion for a directed verdict and dismissed the claims of Mildred and Everett Jameson for loss of society and companionship. Also at that time, plaintiffs voluntarily withdrew their claim for loss of society and companionship on behalf of Douglas Jameson. With regard to the remaining claim for damages for personal injuries, the jury found for Lincourt and the senior center. The trial justice subsequently denied plaintiffs' motion for a new trial.

The plaintiffs raise several issues on appeal. They claim that the trial justice erred by (1) excluding certain expert-opinion testimony; (2) granting Newport's motion for a directed verdict; (3) refusing to admit a memorandum by the Newport finance director into evidence as an admission under Rule 801(d)(2) of the Rhode Island Rules of Evidence; (4) granting a directed verdict with regard to the claims for loss of society and companionship of Jameson's parents; (5) refusing to allow into evidence the affidavit of a psychologist under G.L.1956 (1985 Reenactment) § 9–19–27; and (6) refusing to grant their motion for a new trial.

The plaintiffs' first argument is that the trial justice erred in excluding certain opinion testimony of their expert witness, Professor Marc Richman (Richman). Richman was qualified without objection as an expert in the field of mechanical engineering, particularly in the laws of physics and the study of statics, which is the application of the laws of physics to rigid bodies. In his testimony, Richman explained certain general principles of physics and wind force. He described how certain variables would make it more or less likely that the game would be toppled, such as if the wind blew from different directions, if the wind struck different parts of the game, and whether the stability of the game depended on the surface on which it was set up. Counsel for Lincourt and the senior center both objected to the following query by counsel for plaintiffs, which question referred to the assembly of the game at trial:

"PLAINTIFFS' COUNSEL: Now, given your experience and background, chemical engineering field, mechanical engineering field, laws of physics, study of statics, would this be an alternate way to set this game up so that it would be more stable?"

The trial justice sustained the objections before and after plaintiffs had made an offer of proof that Richman would have testified that two simple, inexpensive remedies could have made the game more stable. She also stated that Richman's answer to the question should be disregarded. The trial justice noted that, in her understanding of the theory of the case, the development and the construction of the game were "not the issue." Her understanding was that this was a premises-liability case.

The plaintiffs argue that the trial justice committed error by "not allowing Professor Richman to testify as to how the game could have been erected on a windy day to allow it to be reasonably safe for children to play." The plaintiffs also contend that Richman's testimony "would have aided the jurors in their search for truth."

The defendant Lincourt argues that, although the game could have been made more stable in myriad ways, "[t]he question to be decided by the jury was not whether it was an engineering masterpiece, but whether it met 'reasonable man' standards of safety in its concept and construction." He emphasizes that the game is not a commercial product but rather a homemade game for which no specific engineering standards exist. The defendant senior center claims that the evidence that plaintiffs sought to admit was not material or relevant to the question before the jury, which was whether the senior center exercised reasonable care in the way in which the game was erected and operated. The senior center also joins in Lincourt's arguments.

Rule 401 of the Rhode Island Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 provides that all relevant evidence is admissible, with certain exceptions, and that irrelevant evidence is inadmissible. Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice" or such considerations as confusion of the issues, misleading the jury, and undue delay, among others.

■ This court has stated:

"The trial justice must first determine whether the evidence being offered falls within the definition of relevant evidence provided by the Rhode Island Rules of Evidence. Even when the evidence is relevant, it is not automatically admissible. The trial court must assess whether the offered evidence, though relevant, is unfairly prejudicial to the opposing party or would mislead or confuse the

jury. R.I.R.Evid. 403." *State v. Squillante*, 622 A.2d 474, 482 (R.I.1993).

We have held that the determination whether evidence is relevant is within the sound discretion of the trial justice. *Id.; State v. Mora*, 618 A.2d 1275, 1279–80 (R.I.1993). The trial justice's "ruling will not constitute reversible error unless it is a prejudicial abuse of discretion." *Squillante*, 622 A.2d at 482 (quoting *State v. Gelinas*, 417 A.2d 1381, 1386 (R.I.1980)).

■ We conclude that the trial justice did not abuse her discretion by refusing to permit Richman to answer the question regarding more stable ways to set up the game. Even if this were a case in which the evidence was clearly relevant, it would not necessarily have been an abuse of discretion to exclude the evidence. This is not, however, a case in which the excluded evidence clearly has probative value. In this case, the record reflects a substantial amount of confusion among counsel for plaintiffs, the trial justice, and counsel for defendants regarding plaintiffs' theories of recovery. During discussions at various points in the trial, plaintiffs stated that this was not a product-liability case and clarified that they were pursuing the following theories: agency, premises liability, and negligent assembly of the game on the day of the incident. The trial justice excluded the evidence based on her interpretation of the theories that plaintiffs presented. Her exclusion of the evidence was not a prejudicial abuse of discretion.

The plaintiffs also argue that the trial justice erred in granting Newport's motion for a directed verdict. At trial, plaintiffs clarified that their claims against Newport were based on two theories of recovery: (1) an agency relationship between Newport and the senior center and (2) premises liability. After a discussion between the trial justice and counsel for plaintiffs regarding the elements of each theory, the trial justice granted Newport's motion for a directed verdict.

The plaintiffs contend that the trial justice erred in granting this motion because ample evidence tended to show that an agency relationship existed between Newport and the senior center. They point to the testimony

of Kay Martin (Martin), the senior center's executive director, that the senior center was operated on city-owned property, that it served Newport residents, that a member of the Newport City Council sat on the senior center's board of directors, and that Newport provided approximately 28 percent of the senior center's budget in 1986. Martin also testified that Newport mowed the senior center's lawn on the day before the bazaar.

Newport asserts that the trial justice correctly granted its motion for a directed verdict because the record was devoid of any evidence that an agency relationship existed between Newport and the senior center. It also contends that the record does not show any nexus between Newport as the principal and the senior center as the agent.

■ In reviewing a trial justice's decision on a motion for a directed verdict, this court must engage in the same analysis that the trial justice is to perform. *Valente v. Rhode Island Lottery Commission*, 544 A.2d 586, 590 (R.I.1988).

> "We examine the evidence and all inferences reasonably flowing therefrom in the light most favorable to the nonmoving party. We do not consider the credibility of the witnesses or the weight of the evidence. We then determine whether * * * there is evidence for the jury to consider which would warrant a finding in favor of the nonmoving party. If we conclude that there is evidence supporting that party or that there is evidence on which reasonable minds could differ, then the jury is entitled to decide the facts of the case." *Id.* (quoting *Marcotte v. Harrison*, 443 A.2d 1225, 1229 (R.I.1982)).

■ To establish an agency relationship, plaintiffs must show three elements: (1) a manifestation by the principal that the agent will act for him or her; (2) the agent's acceptance of the undertaking; and (3) an agreement by the parties that the principal will control the undertaking. *Baker v. ICA Mortgage Corp.*, 588 A.2d 616, 617 (R.I.1991) (per curiam) (citing *Lawrence v. Anheuser-Busch, Inc.*, 523 A.2d 864, 867 (R.I.1987)). Viewing the evidence in the light most favorable to plaintiffs, we find that plaintiffs have

not demonstrated that Newport gave any manifestation that the senior center would act for it with regard to the bazaar, nor have they shown that Newport agreed to exercise control over the event. Therefore, we conclude that no evidence supports plaintiffs' contention concerning the existence of an agency relationship and that reasonable minds could not differ on this issue. We also have determined that the record does not support the conclusion that Newport or its agent committed an act or omission that was causally related to plaintiffs' injuries.

■ The plaintiffs next argue that the trial justice erred in refusing to admit into evidence as an admission under Rule 801(d)(2) a memorandum that the Newport finance director wrote. The plaintiffs sought to introduce a memorandum dated June 20, 1986 from Gary R. Esposito (Esposito), Newport director of finance and support services, to the Newport city solicitor. The memorandum contains Esposito's opinion that Newport had "liability exposure" for the claim for Jameson's injuries. The trial justice excluded the memorandum, stating that it constituted "a lay person relating his lay belief about a legal issue."

The plaintiffs contend that the trial justice should have admitted the memorandum minus one paragraph and the jury should have been left to determine how much weight to accord to it. They claim that it was admissible as a statement of a party-opponent under Rule 801(d)(2). Newport argues that, because plaintiffs did not establish a "nexus" between the senior center and Newport, the memorandum from Esposito "is meaningless." Newport also asserts that the memorandum contains opinion and a nonqualified legal conclusion, not an admission of fact.

■ Generally, courts do not allow opinion evidence on a question of law, unless the issue relates to a matter of foreign law. McCormick, *Evidence* § 12 at 31 (3d ed. Cleary 1984). This court has upheld a trial justice's disallowance of certain testimony because the form of the question "would require a legal conclusion and would make the witness the judge of defendant's liability." *See Rivard v. Plante*, 80 R.I. 312, 318, 96

A.2d 644, 647 (1953). We have also stated that we could not adopt the opinion of a tax-assessor witness regarding the legal effect of certain notices concerning tax assessment. *See Pendleton v. Briggs,* 37 R.I. 471, 474, 93 A. 794, 795 (1915). Therefore, the trial justice correctly excluded Esposito's legal conclusion concerning Newport's liability. Because of our determination that the trial justice's grounds for excluding the memorandum were correct, we need not reach the issue of whether the memorandum was a nonhearsay statement by a party-opponent.

The next issue that plaintiffs raise in their prebriefing statement is that "[t]he trial justice erred in granting a directed verdict with regard to the loss of consortion [*sic*] claims of Stephen Jameson's parents." Unfortunately, the record is unclear regarding the exact type of motion that the trial justice granted. A brief review of some of the procedure at trial is required to analyze the trial justice's ruling properly.

After plaintiffs rested their case, Lincourt's counsel argued his motion for a directed verdict and stated that his understanding through discussions with counsel for the other defendants was "that they [had] similar motions." The trial justice denied that motion and stated that she would hear the senior center's motion. Counsel for the senior center then declined to continue with the issue, explaining that he would have made the same argument that the trial justice had just ruled against. He addressed the issue of agency between the senior center and Lincourt, and the trial justice denied the senior center's motion. After hearing plaintiffs' arguments, the trial justice granted Newport's motion for a directed verdict and stated that the only remaining issues were counts 2, 3, and 4 of the complaint, the loss-of-consortium claims. Counsel for the senior center asserted that, with respect to the loss-of-consortium claim of the minor brother, plaintiffs had presented no evidence. Counsel for plaintiffs then voluntarily withdrew that count of the complaint. The trial justice concluded that she did not "think the evidence, factual evidence that was presented, amounts to a legal showing of loss of consortium or society as to mother and father."

Counsel for plaintiffs argued that there was evidence in the record and that the jury could draw certain inferences to support the parents' claims for loss of consortium. The trial justice then stated, "I'm going to grant the motion with respect to those two remaining counts, 2 and 3, I believe, to dismiss." The civil-case action report that the Superior Court clerk filled out states that the senior center's motion to dismiss counts 2 and 3 was granted.

We believe that the most reasonable conclusion to draw from this confusing record is that the trial justice granted a motion under Rule 50 of the Superior Court Rules of Civil Procedure. Rule 50(a) provides in pertinent part:

> "A motion for a directed verdict may be made at the close of the evidence offered by an opponent or at the close of all the evidence. * * * When a motion for a directed verdict is made without resting at the close of the evidence offered by an opponent, the court in lieu of granting the motion may order the claim involuntarily dismissed, which dismissal shall be without prejudice."

In this case, it appears that in lieu of granting the senior center's motion for a directed verdict, the trial justice ordered the loss-of-consortium claims involuntarily dismissed.

The plaintiffs argue that there was sufficient evidence for the jury to infer reasonably that both parents could not enjoy "normal activities" with their two children because of Jameson's hospitalization and recovery process. The defendant Lincourt argues that Jameson's father did not testify at all and that his mother did not show in her testimony that she incurred any "loss" as required under G.L.1956 (1985 Reenactment) § 9-1-41. Therefore, Lincourt contends, the only basis for the jury to find a loss of consortium was "rank speculation." He also claims that the issue is moot because none of defendants was found negligent.

 Viewing the evidence and all inferences reasonably flowing from the evidence in the light most favorable to the nonmoving parties, we conclude that plaintiffs did not establish by evidence in the record that they suffered a loss of Jameson's society and com-

panionship as a result of tortious injury to him. *See* § 9–1–41(c). Thus, the trial justice correctly dismissed both parents' claims for loss of consortium. We note that a claim for loss of consortium "is derivative in nature and inextricably linked" to the action of the injured child or spouse. *See Normandin v. Levine*, 621 A.2d 713, 716 (R.I.1993).

■ The next issue that plaintiffs address is that the trial justice erred in refusing to allow the affidavit of Dr. Anthony Spirito, a psychologist, under § 9–19–27. The trial justice excluded the document because it did not comply with the statute's ten-day rule and because some of the language was equivocal and therefore did not meet the standard of medical certainty.

That statute authorizes the admissibility of itemized bills and hospital and medical records by way of affidavit. Section 9–19–27(a); *see also Hudson v. Napolitano*, 575 A.2d 187, 188 (R.I.1990). The statute contains a proviso that a written notice of the intention to offer such bill or report along with a copy of the bill or report be sent by certified mail, return receipt requested, to the opposing party or parties or their counsel not fewer than ten days before its introduction into evidence; it also requires that an affidavit of such notice and the return receipt be filed with the clerk of the court. *See* § 9–19–27(a). The statute includes reports of psychologists. *See* § 9–19–27(b).

At trial, plaintiffs conceded that the affidavit notice was not within the ten-day period. They argue that, even though defendants did not receive the "actual affidavit" until approximately six days prior to trial, defendants had received the psychologist's report in 1991. Lincourt claims that this issue is moot because of the lack of negligence by defendants.

This court has held that providing a ten-day notice as set forth in the statute is a condition precedent to the court's receipt of an affidavit into evidence. *See Hudson*, 575 A.2d at 188–89. Therefore, the trial justice correctly excluded the affidavit for plaintiffs' failure to comply with the ten-day rule. Because of our ruling on this issue, we need not reach the question whether the opinion contained in the affidavit reached the required degree of medical certainty.

The final issue that plaintiffs raise on appeal is that the trial justice erred in denying their motion for a new trial on all the issues. After a hearing on November 13, 1992, the trial justice denied plaintiffs' motion for a new trial.

With regard to the directed verdict granted in favor of Newport, the motion for a new trial is a nullity. *See Coffey v. American Cancer Society*, 540 A.2d 643, 645 (R.I.1988). We have held that "a directed verdict is based upon a determination of law and not of fact." *See id.* Therefore, "the motion for a new trial ha[s] no relevance to the issues upon which the verdict [was] directed." *Id.*

■ With regard to the remaining issues in the case, the extent of plaintiffs' argument in their prebriefing statement is the heading claiming that the trial justice erred in denying their motion for a new trial. They have not submitted a transcript of the hearing, and thus we do not have a record regarding the trial justice's grounds for denying the motion or the arguments of any of the parties. We conclude, therefore, that plaintiffs have not met their burden of showing that in the trial justice's analysis of the motion for a new trial she was clearly wrong or that she overlooked or misconceived material evidence. *See Fox v. Allstate Insurance Co.*, 425 A.2d 903, 908 (R.I.1981).

After hearing the arguments of counsel and reviewing the memoranda that the parties submitted, this court concludes that cause has not been shown.

The plaintiffs' appeal is therefore denied and dismissed, and the judgments appealed from are affirmed. The papers are remanded to the Superior Court.

FAY, C.J., did not participate.