Justice GOLDBERG,
concurring in part and dissenting in part.
As an initial matter, I note that the fact that four justices have found it appropriate to write on the issue of the revocation of the pro hac vice admission — which is guided by an abuse-of-discretion standard— speaks loudly. This is a decision that is committed to the trial justice. Because I am of the opinion that the trial justice did not abuse her discretion when she revoked Attorney Mook’s pro hac vice status, I respectfully dissent from that portion of the majority decision. The grant of pro hac vice admission in this state is a privi *864 lege which is “permitted in the discretion of this Court[.]” Article II, Rule 9(a) of the Supreme Court Rules, Admission of Attorneys and Others to Practice Law. When an out-of-state attorney is accorded such a privilege, it is incumbent upon that attorney to comport himself or herself in accordance with the laws of this state and the rules of the Rhode Island Judiciary. See Cooper v. Hutchinson, 184 F.2d 119, 123 (3rd Cir.1950) (stating that the rights and duties of pro hac vice counsel, once admitted, are identical to those of a barred attorney). When an attorney fails to comply, as is the case here, it is within the inherent power of the court to remedy the situation. See Standing Committee on Discipline of the United States District Court for the Southern District of California v. Ross, 735 F.2d 1168, 1170 (9th Cir.1984) (“Any court which has the power to admit attorneys to practice may also sanction them for unprofessional conduct.”); see also Baldwin Hardware Corp. v. FrankSu Enterprise Corp., 78 F.3d 550, 562 (Fed.Cir.1996) (concluding that power to sanction “encompasses the authority to suspend an attorney admitted pro hac vice from further practice before the court,” citing United States v. Engstrom, 16 F.3d 1006, 1012 (9th Cir.1994)); Royal Indemnity Co. v. J.C. Penney Co., 27 Ohio St.3d. 31, 501 N.E.2d 617, 620 (1986) (“[O]nce pro hac vice status is extended, a trial court retains the power to revoke the status.”). A decision to revoke the pro hac vice status of an attorney is committed to the sound discretion of the trial justice. See Fremming v. Tansey, 626 A.2d 219, 220 (R.I.1993) (review of trial justice’s decision to impose sanction is guided by abuse-of-discretion standard).
Attorney Mook was admitted pro hac vice in this case for two purported reasons: (1) his expertise regarding dram shop claims[1] and (2) his prior relationship with “the client” — not defendant Daniel Stack, but rather his insurance company. As a prerequisite to admission pro hac vice, Attorney Mook was required to be sponsored by a licensed attorney who maintains an office in Rhode Island; whether the local counsel met the requirement that he maintain an office in this state is questionable, at best. Nonetheless, this formality was not the basis for the revocation of Attorney Mook’s pro hac vice admission.[2]
The trial justice’s basis for revoking the pro hac vice admission of Attorney Mook was twofold.[3] First, she determined that Attorney Mook’s examination of Kristopher, Teresa, and Timothy was “well beyond the letter and spirit of Rule 26 [of the Superior Court Rules of Civil Procedure] * * * [and that Attorney Mook] sought to embarrass [them] and humiliate [them].” *865 The trial justice determined that Attorney Mook’s questions about highly personal and sensitive issues were not geared to lead to the discovery of admissible evidence, but rather, were geared “to discourage [plaintiffs] from pursuing the claim.”[4] The trial justice concluded that “[n]o reasonable attorney would have determined this line of questioning to be calculated to the discovery of admissible evidence.” Although I agree with this finding, I am of the opinion that standing alone, this behavior, although deplorable, may not have risen to such a level of impropriety as to warrant revocation.
It is the trial justice’s second basis for revocation of Attorney Mook’s pro hoc vice admission, his conduct during the deposition of the treating physicians that convinces me that the trial justice acted appropriately. The trial justice relied on well-established precedent in Ondis v. Pion, 497 A.2d 13 (R.I.1985) and Sousa v. Chaset, 519 A.2d 1132 (R.I.1987), that a fact witness can never be compelled to provide an expert opinion. The trial justice noted the multiple objections from not only plaintiffs’ counsel, but from Dr. Hum-byrd himself to questions that called for Dr. Humbyrd to give an expert opinion. Ultimately, the trial justice found
“that [Attorney] Mook wilfully [sic] violated the well-established law in attempting to require Dr. Humbyrd to testify as an expert. * * * The [c]ourt concludes that [Attorney] Mook knowingly deceived [plaintiff’s [sic] counsel by stating in writing before the deposition that he was going to treat Dr. Hum-byrd as a fact witness when in fact at some point * * * he intentionally engaged in a line of questioning reserved for [an] expert witness.”
After conducting a thorough review of the record, the trial justice stated that she found “sufficient basis on this record to *866 determine that [Attorney Mook’s] conduct r[ose] way above zealous advocacy, reaching the level of egregiousness envisioned by Rule 11 [of the Superior Court Rules of Civil Procedure].”
In my opinion, the conduct exhibited by Attorney Mook was censurable and beyond the bounds of acceptable behavior. Attorney Mook knowingly and willfully violated established law in this state and exhibited a complete disregard of the well-established rule that a fact witness may not be compelled to offer an expert opinion against his or her will. See Sousa, 519 A.2d at 1136 (“An expert who has not been engaged, but only subpoenaed, cannot be compelled to give opinion testimony against his or her will.”). Attorney Mook knew full well that Dr. Humbyrd was noticed as a fact witness only — a situation that was acknowledged in correspondence between Attorney Mook and counsel for plaintiffs[5] — yet he proceeded to pose a litany of questions that would require Dr. Humbyrd to give an expert opinion. In the face of numerous questions that called for an expert opinion, objections were raised by plaintiffs’ counsel as well as Dr. Humbyrd. At one point, Dr. Humbyrd stated that he would not answer a question and, when challenged by Attorney Mook as to the basis for not answering, Dr. Hum-byrd replied: “[i]t’s beyond the scope of my — the requisition was for me to testify regarding my treatment of Mr. Plante, which I have done. I will not comment in general orthopedic terms regarding anything beyond the scope of that.” After Dr. Humbyrd’s assertion — that he did not want to provide “further conjecture as to any future issues regarding this patient”— Attorney Mook pressed on, again asking essentially the same question. At that point, Dr. Humbyrd made an unequivocal request to have his personal attorney present.[6] This request was ignored, and Attorney Mook persisted and posed the same question that had prompted Dr. Humbyrd to request the presence of his personal attorney. Except this time Attorney Mook explicitly asked for a “yes or no” response — as if this would change Dr. Humbyrd’s stance on whether the question called for him to give an expert opinion.
Instead of acknowledging that Dr. Hum-byrd was noticed purely as a fact witness and, therefore, could not be compelled to give an expert opinion, Attorney Mook issued the following admonition:
“I just want to warn you, Doctor — not warn you. I just want to say on the record that I disagree with your impression of the legal significance of this question. We may well have to go before a judge, ask the judge to make a decision about this issue, that series of questions. If the judge rules in favor of my view of the question, then we will require to have you come back and ask you maybe five minutes of questions on that issue, or you can answer it on the record, however you can, and whether or *867 not it’s ever admissible later will be decided by a judge.
“But the preferential way that the appeals court says it should be done is that the witness should answer the question, and any fight over the legality of the question and answer can be determined once it’s in a transcript, and some judge can decide once at trial or in a proceeding if it’s admissible or not. So you can do whichever way you prefer. I’m just saying.”
This conduct is improper and amounts to an implied threat to the doctor that he will be further inconvenienced by having to return for “five minutes of questions” if a judge decides the questions should be answered. Tellingly, the witness persisted in his refusal to answer the questions, and the defense has not sought a ruling compelling Dr. Humbyrd to provide further testimony. The position taken by Attorney Mook — that the treating physician must give an expert opinion against his will — mirrors the strict adherence to Kelvey v. Coughlin, 625 A.2d 775 (R.I.1993) that the majority opinion espouses. I disagree with this reasoning and suggest that it ignores an important part of our discovery jurisprudence and fails to acknowledge Ondis and Sousa.
Here, Dr. Humbyrd was subpoenaed purely as a fact witness. Yet, questions were posed seeking his expert opinion. Clearly this is contrary to our well-established law as set forth in Sousa and Ondis. By implicitly elevating the holding of Kel-vey over the safeguards announced in Sousa and Ondis, the Court is creating a hard- and-fast rule that does not serve the bar or the bench and leaves counsel in a quandary about terminating a deposition of their client’s treating physician based on opposing counsel’s defiance of our settled law. Kelvey addressed whether opposing counsel can instruct a witness not to answer a question. In this case, Dr. Humbyrd refused to answer these inappropriate questions, rightfully, I conclude. Doctor Hum-byrd had an absolute right not to answer questions that sought an expert opinion, yet the majority opinion criticizes plaintiffs’ counsel for not standing mute and employs this criticism as grounds for reversing the trial justice. Lawyers are not potted plants and it is not in the nature of experienced trial lawyers to remain silent while another lawyer tramples on the rights of their client’s treating physician. We should not require that they do so.
Furthermore, the alleged Kelvey violation committed by plaintiffs’ counsel in no way should be considered a mitigating factor when examining the conduct of Attorney Mook. Whether or not plaintiffs’ attorney elected to stop the deposition pursuant to Rule 30(d)(3) of the Superior Court Rules of Civil Procedure[7] has no bearing on the fact that the questioning by Attorney Mook was improper and deceitful. Stated differently, our decision in Kelvey does not give an attorney carte blanche to question a witness regarding improper topics or require a fact witness to render expert opinions only to postpone the resolution of the admissibility until the time of trial. That does not un-ring the bell and is *868 small comfort to those who practice in the arena. Thus, even if the proper procedure was to stop the deposition to obtain a ruling from a Superior Court justice — a course of action suggested by plaintiffs’ counsel but rebuffed by Attorney Mook— the failure to do so does not absolve the conduct of Attorney Mook. I can think of no more inappropriate line of questioning than trying to force a fact witness to answer questions requiring expert opinion in contravention of our well-established precedent. Sousa, 519 A.2d at 1135-36; Ondis, 497 A.2d at 18. On this basis alone, I believe that the trial justice did not abuse her discretion in deciding to revoke the pro hac vice admission of Attorney Mook. The fact that Attorney Mook did not pose, hypothetical questions to Dr. Humbyrd, as the majority notes, is of no moment to this analysis; as the witness stated, the questioning sought “further conjecture as to any future issues regarding [Kristopher].” This is opinion testimony.
While Attorney Mook’s questioning of Dr. Humbyrd provided the trial justice with ample basis to revoke Attorney Mook’s pro hac vice admission, the manner in which Attorney Mook conducted the depositions of Kristopher, Teresa, and Timothy and comported himself before the trial justice supplied further evidence warranting the revocation. The trial justice conducted a thorough review of the questions that she deemed inappropriate and afforded Attorney Mook ample opportunity to explain why these questions could lead to the discovery of admissible evidence. This exchange spanned twelve pages of the hearing transcript. Two weeks later, when rendering her decision, the trial justice stated that:
“[a]t the hearing * * * the [c]ourt attempted to elicit from [Attorney] Mook a legitimate basis for the questions. [Attorney] Mook addressed that issue again today. The [c]ourt is not satisfied and was not satisfied two weeks ago with his explanation and find that they were disingenuous. I reject them.”
The trial justice’s conclusion that Attorney Mook’s conduct was “outrageous and egregious” and his explanations “disingenuous” demonstrates to me that she carefully considered whether revoking Attorney Mook’s pro hac vice admission was warranted. Consequently, I agree with the Superior Court justice’s conclusion that the questioning was plainly improper, and I cannot agree with the majority’s characterization that it was merely “unorthodox.” Additionally, the trial justice enunciated that her decision was based upon “a very significant and sufficiently lengthy recordf.]” See Williams & Connolly, L.L.P. v. People for the Ethical Treatment of Animals, Inc., 273 Va. 498, 643 S.E.2d 136, 148 (2007) (concluding that circuit court did not abuse its discretion in revoking pro hac vice admission of attorney). It is apparent from a review of the record that the trial justice properly exercised her discretion.
Furthermore, it is evident that the trial justice acted with due diligence by proceeding in the manner she did and making detailed and appropriate record findings. After a thorough search of the law of other jurisdictions on this distasteful topic, it is evident that appellate courts vacate such revocation orders for two primary reasons:[8] (1) the pro hac vice attorney was not given adequate notice and hearing; or (2) in a criminal case, the client’s Sixth Amendment right to counsel of his or her own choosing was not properly considered. Here, the trial justice appropriately dealt with both of these concerns.
*869 First, shé conducted an initial hearing on September 18, 2012. At the conclusion of this hearing she stated, “I feel that because I may revoke your pro hac vice status, I want to give you a greater opportunity to respond and to engage counsel if you so choose. Therefore, as it relates to this motion, I’m continuing it for further hearing and decision.” Two weeks later, the trial justice again gave Attorney Mook the opportunity to respond to the alleged egregious conduct.[9] Only after this hearing did the trial justice render her decision.
Second, the trial justice concluded that Attorney Mook’s clients would not be prejudiced because local counsel was able to take over as lead counsel. Although the trial justice did not undertake a Sixth Amendment balancing test, such is not required in a civil action sounding in tort. See United States v. Nolen, 472 F.3d 362, 375, 376 (5th Cir.2006) (concluding that a criminal defendant’s Sixth Amendment rights must be weighed when revoking pro hac vice admission of a criminal defendant’s counsel). I am of the opinion that the trial justice’s finding that defendant in this civil action would not be prejudiced by revocation of Attorney Mook’s pro hac vice admission was more than sufficient.
Accordingly, I am satisfied that the order revoking Attorney Mook’s pro hac vice admission is sufficient to remedy the conduct in this case. However, I am not convinced that the additional requirement that Attorney Mook advise opposing counsel of this matter in any future case serves any useful purpose and is overly burdensome.
•For the foregoing reasons, I would grant certiorari as it relates to the Superior Court justice’s revocation of Attorney Mook’s pro hac vice admission but would vacate that portion of the order requiring Attorney Mook to present a copy of her decision to opposing counsel in any present or future case where he. sought pro hac vice admission in Rhode Island. Consequently, I dissent.

. As the trial justice alluded, any dram shop claim on behalf of the insurance company is dubious, at best, given that it was Attorney Mook’s client who was the drunk driver in this case, and his insurance company is seeking indemnity from the barroom where he got drunk. See G.L. 1956 chapter 14 of title 3.

. This Court previously found that noncompliance with this prerequisite was not fatal to a pro hac vice admission and granted a ten-day window in order for pro hac vice counsel to obtain a proper sponsoring attorney. See In re Gauvin, 779 A.2d 645, 645-46 (R.I.2001) (mem.).

.While not a basis for the trial justice's revocation or a reason for my dissent, it should be noted that Attorney Mook misstated when he first learned of the divorce between Teresa and Timothy. In his pleadings and at the hearings before the trial justice, Attorney Mook insisted that the first time he learned of the divorce was at the deposition of Teresa and Timothy. However, it was actually Kristopher who first informed Attorney Mook of the divorce, and Attorney Mook in fact questioned Kristopher about the divorce, three weeks before the depositions of Teresa and Timothy.

.A sample — but certainly not a complete list- — of such questions by Attorney Mook include:
1. "Q tposed to Kristopher]: All right. I don't want to embarrass you, but I want to ask you, were you sexually active with [your girlfriend] during high school?”
2. "Q [posed to Kristopher]: Okay. And after the accident when you were at URI you would see [your girlfriend]. Were you still sexually active with her?”
3. "Q [posed to Kristopher]: Must be a very fun situation, huh?" after eliciting that Kristopher was living with his ex-girlfriend.
4. "Q [posed to Teresa]: Did [Kristopher] ever discuss with you his sexual activity with his girlfriends during high school before the accident?”
5. "Q [posed to Teresa]: Okay. Can you just * * * tell me in a succinct way what the reason was why you decided to divorce?”
6. "Q [posed to Timothy]: Did [Kristopher] ever share with you or did you ever discuss with him his sexual activity, if any, with [his girlfriend]?"
7. "Q [posed to Timothy]: You had not discussed [the divorce] with your wife before she asked you for a divorce the first time around the fall of '09, correct?”
8. "Q [posed to Timothy]: Again, I’m going to ask you for the record again what were the reasons for the divorce that your wife gave to you when she asked you for the divorce?”
9. "Q [posed to Timothy]: Okay. As far as you know since '09 has you[r] wife been dating or had any relationships since '09 when she asked for the divorce?”
10. "Q [posed to Timothy]: Do you know her relationship with Farzana?”
11. "Q [posed to Timothy]: Do you know if Farzana is your — is Ter[esa's] lover?"
12. "Q [posed to Timothy]: Are you aware if Kris has knowledge of whether or not Farzana is Ter[esa’s] lover?"
13. "Q [posed to Timothy]: Have you ever discussed with Kris his knowledge of whether or not he knows if Farzana is Ter[esa] Plante’s lover or not?”
14. "Q [posed to Timothy]: Have you discussed with Kris his feelings about his mother’s relationship, whatever it is, with Farzana?”

. Preceding the deposition, Attorney Mook wrote to plaintiffs' counsel stating that if Kristopher’s treating physicians — Dr. Humbyrd included — were not designated as trial experts then he would “proceed to notice these depositions as fact witnesses only.” The plaintiffs’ counsel later advised Attorney Mook that the treating physicians would be fact witnesses and not experts.

. Doctor Humbyrd stated: “If I were going to respond to that question, I would want counsel of my own representing me before I respond to it, and I do not have counsel present. I was subpoenaed to testify regarding my records, which I have done, I think very adequately, and I think very clearly, and I think I’ve spelled it out. So to go beyond this point and further conjecture as to any future issues regarding this patient, who I’m currently not treating, is beyond the scope of what is requested of me, as the subpoenaed person here.”

. Rule 30(d)(3) of the Superior Court Rules of Civil Procedure provides:
“At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the county where the deposition is being taken may order the officer or examining attorney conducting the examination to cease forthwith from taking the deposition or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c).”

. Other than decisions based on the two identified grounds, there is a dearth of case law reversing revocation of pro hac vice admissions on abuse-of-discretion grounds.

. Attorney Mook took advantage of this opportunity, filing supplemental material, including an affidavit of his educational background and subsequent legal accomplishments. Additionally, he sought to address many of the concerns identified by the Superior Court justice at the earlier hearing. He was .found to be disingenuous.